JOHN HETHERINGTON, Plaintiff, *v.* FIORELLO H. LA GUARDIA et al., Constituting the Board of Estimate of the City of New York, Defendants.

Supreme Court, Special Term, Queens County, November 15, 1945.

*Charles Margett* for plaintiff.

*Ignatius M. Wilkinson, Corporation Counsel* (*Morris Shapiro* of counsel), for defendants.

HALLINAN, J. Plaintiff, who had been a member of the New York City Employees' Retirement System (hereinafter referred to as the system) since its inception in 1920, retired as Surrogate of Queens County on December 31, 1942, having attained the constitutional age limit of seventy years. Following some correspondence and personal conversations in the office of the system, he filed on December 17, 1942, a form, dated December 16, 1942, entitled "Selection of Benefits under Option Four", which provided for (1) payment on his death of the gross sum of $20,000 to his children; (2) an allowance of $2,400 a year, payable annually to his wife if she survived him; and (3) payment to himself for life of the sum then remaining of his gross annual retirement allowance. On December 28, 1942, plaintiff executed an additional form which contained certain information concerning his age and public service.

There followed some correspondence between plaintiff and the system which need not at this time be adverted to, except to state that by a letter, dated January 13, 1943, he was notified that his " selection of benefits under Option 4, received here on December 17, is acceptable as to form." Up to this time no action on plaintiff's application had been taken by the Board of Estimate and no payments whatever made to him.

On March 7, 1943, the plaintiff wrote the secretary of the system as follows: " I understand that the matter of approval of

my application for retirement will be on the calendar for next Thursday, the 11th inst., and I would very much appreciate it if it could be deferred for a week or so for the reason that my wife was unexpectedly taken ill on Feb'y 28th last and is in a precarious condition and should she not recover I wish to change my selection of option.''

This was answered by letter, dated March 9, 1943, which reads in part as follows: '' Answering yours of March 7th, I must advise you that the part of your retirement allowance contract relating to the payment of a survivor pension of $2400 to Mrs. Hetherington may not be changed, as the contract has been in force since January 1st with protection both to you and to Mrs. Hetherington in the respective survivorship pensions involved. * * * You, of course, do retain the right to change the beneficiary from time to time in respect to your lump sum insurance of $20,000 without changing the contract itself, but in respect to a joint and survivorship pension there can be no change.''

The matter came on before the Board of Estimate on March 11, 1943. Said board passed a resolution granting the plaintiff his selection. As of December 31, 1942, plaintiff had paid into the system, by means of salary deductions, including interest, the sum of $50,386.30. The city's contribution amounted to the sum of $54,156.77, making a total reserve at the beginning of retirement of $104,543.07. Had he chosen his maximum retirement allowance he would have received annually the sum of $14,441.61. He was given the lesser annual retirement allowance of $9,794.31, the difference to be used to assure the $20,000 gross sum payment and the annual income of $2,400 to his wife, as surviving beneficiary.

Plaintiff's wife died March 4, 1944, of cerebral thrombosis, due to carcinoma uterus. On July 20, 1944, he petitioned the Board of Estimate for a change of the selection for his wife and that the principal allotted for her annuity be paid to his children upon his death by way of an additional gross sum benefit. This petition was denied on September 21, 1944. The instant action was commenced in December, 1944. He seeks the cancelation of his selection so far as his late wife is concerned and that the principal of the annuity fund be held for payment in a gross sum to his children on his death and added to the $20,000 now held for that purpose, so that there be paid to them as a death benefit the total sum of $46,473.

The defendants contend that having exercised his selection of option, the plaintiff has no right to the relief here sought; that even if such right had existed, by accepting up to the pres-

ent, without protest or objection, the benefits as provided in the resolution of the Board of Estimate, there has been an accord and satisfaction and a waiver of all rights to a change of option; that he has been guilty of gross and inexcusable laches for failing to institute this action for a period of two years; and that in any event he has an adequate remedy at law by way of a proceeding under article 78 of the Civil Practice Act.

The plaintiff's rights stem from the fact that the granting of option four was discretionary with the Board of Estimate, and that *before* such discretion was exercised by the passage of the resolution by that body, the plaintiff, by letter dated March 7, 1943, requested the system to have action by the board on March 11, 1943, deferred for a week or so, because should his wife " not recover I wish to change my selection of option." The system's actuary had written to the plaintiff, on December 14, 1942, in part as follows: " The allowance of the benefit under Option 4 is *discretionary with the Board of Estimate.* Because of the fact that each special allowance of this character requires individual calculation each year in order to ascertain the liabilities of the system under the law, and in order to report to the Insurance Department, members are usually advised to avoid requesting special options, where one of the specified options, such as 1, 2 or 3 is appropriate." (Italics supplied.)

We are not here dealing with a self-executing statute as was the case in *Matter of Pierne* v. *Valentine* (291 N. Y. 333). Here retirement is not accomplished until the Board of Estimate has acted. (*People ex rel. Brady* v. *Martin,* 145 N. Y. 253; *Matter of Eberle* v. *LaGuardia,* 285 N. Y. 247 and the authorities cited at p. 252.) As the allowance of benefits under option four was discretionary with the Board of Estimate, it is difficult to perceive any force in the defendants' contention that the plaintiff's selection was irrevocable even *before* the Board of Estimate had an opportunity to consider and determine whether to accept or to disallow it. The incongruity of this proposition is further emphasized by the defendants' letter, the sending of which was established by secondary evidence. This letter, dated *January 11, 1943,* states that plaintiff's selection under option four " will be in full force and effect and irrevocable on and after *January 1, 1943,* your effective retirement date, *unless withdrawn prior thereto.*" (Italics supplied.) How could it be withdrawn prior to January 1, 1943, if this letter of notification was sent ten days after the date which it is claimed plaintiff's selection became irrevocable?

Moreover, section B3–46.0 of the Administrative Code of the City of New York provides: " Until the first payment on account

of any benefit is made, the beneficiary  \*  \*  \* may elect to receive such benefit in a retirement allowance payable throughout life, or the beneficiary  \*  \* · \* may then elect to receive the actuarial equivalent at that time of his annuity, his pension, or his retirement allowance in a lesser annuity or a lesser pension, or a lesser retirement allowance, payable throughout life with the provision that  \*  \*  \*.'' Concededly, plaintiff did not receive his first payment until April 2, 1943. His letter of March 7, 1943, twenty-six days prior thereto and four days prior to the resolution of the Board of Estimate, should not have been and cannot now be ignored.

As for the plaintiff's acceptance of retirement payments at the rate of $9,794.31 per annum without protest or objection, it must be remembered that his reserve amounted to the sum of $104,543.07, which entitled him to a maximum annual retirement allowance of $14,441.61. Approximately $1,980 per annum of the difference was deducted to provide for the payment of the $20,000 death benefit, and $2,647 per annum to pay his wife $2,405 yearly should she survive him. In receiving payments on the basis of the *reduced* annual allowance, plaintiff received an amount to which he was entitled in *any* event, and, therefore, the retention of such *minimum* payments without protest or objection may not be considered as an accord and satisfaction or waiver of the rights now asserted. (Cf. *E. T. C. Corp.* v. *Title Guar. & Trust Co.*, 271 N. Y. 124, 128.)

As for the defense of laches, that has not been established. Mere delay is insufficient to establish such a defense in the absence also of injury, change of position, intervention of equities, loss of evidence or other possible disadvantages resulting from such delay. (*Feldman* v. *Metropolitan Life Insurance Co.*, 259 App. Div. 123.) Plaintiff does not seek to substitute a different life nominee to receive the benefit to which his wife would have been entitled had she survived him. He simply asks that the $2,647 deducted annually for a purpose which cannot be carried out should be added to the reserve for his children and paid as a death benefit in a lump sum, in addition to the $20,000 already provided.

Under all of the circumstances the plaintiff is entitled to the relief he seeks and a proceeding by way of article 78 of the Civil Practice Act would not have been appropriate to his situation. *All* motions to strike out evidence, as to which decision was reserved, are denied. Plaintiff's motion for judgment is granted and that of the defendants denied. Appropriate exceptions are granted.

Settle findings and judgment on notice.