ESTATE OF WILLIAM J. HIGGS, DECEASED, THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11023. Promulgated March 2, 1949.

*Alan L. Gornick, Esq.*, for the petitioner.
*Francis X. Gallagher, Esq.*, for the respondent.

### OPINION.

MURDOCK, *Judge*: The Commissioner determined a deficiency of $24,514.59 in estate tax. He added to the net estate, as disclosed by the return, $78,036 as the cost of a survivorship annuity payable to the decedent's widow. The issues for decision are whether some amount should be included in the gross estate representing the value of the survivorship annuity as a transfer within the meaning of section 811 (c) of the Internal Revenue Code and what the correct amount to represent that value is. The facts have been stipulated.

William J. Higgs, referred to herein as the decedent, died on May 18, 1943. The Federal estate tax return for his estate was filed with the collector of internal revenue for the fifth district of New Jersey. The decedent was born on August 1, 1872. He was survived by his wife, Ella Bolton Higgs, who was born on May 10, 1879.

The decedent retired as an employee of Socony-Vacuum Oil Co. on January 1, 1935. He had been employed by that company or its predecessors for approximately 47 years and 3 months, or since September 29, 1887. The employer had had various systems of pensions and retirement benefits in which the decedent had been a participant, but those were terminated and the employer entered into an agreement with the Metropolitan Life Insurance Co. on January 1, 1931, creating Retirement Benefit Group Plan No. 103, referred to herein as the plan. That plan was underwritten and administered by Metropolitan.

The decedent became a participant in the plan and certificate No. A–12 was issued to him. The plan gave an employee an option, exer-

cisable prior to the commencement of annuity payments, whereby he might "request the Insurance Company that his Retirement Annuity commence on the normal retirement date for a reduced amount, as determined by the Group Contract, and that it shall be continued after his death, to his designated dependent, should such person survive him." Computations were to be made so that the resulting annuities would be equivalent in value to the annuity to which the employee himself would have been entitled if the option had not been exercised. The equivalents were determined on the basis of the mortality tables and interest rates used by the insurance company in determining the purchase price which it charged the employer for each annuity when it was purchased.

The decedent, pursuant to the option provision, designated his wife as dependent and elected to receive a reduced amount so that the annuity would be continued in a lesser amount after his death to his wife, should she survive him. He made a request on September 12, 1934, that his annuity on retirement be in an amount reduced to the extent necessary to provide an annuity of $7,000 for his wife for her life after his death in case she should survive him. The insurance company granted his request. It determined that he could receive an annuity of $7,000 during his life, which would be continued after his death and be paid to his wife thereafter for her life and, in addition, he could receive for his life an annuity of $11,985.27. He was entitled to receive, and was paid from January 1, 1935, until his death, $18,-985.27 annually, and after his death the payments of $7,000 annually were made to his widow under that election. If he had not exercised the option providing for a continuation of the retirement annuity to his designated dependent, he would have been entitled to receive an annuity of $21,750 for his life. That amount represented 75 per cent of his salary of $29,000 per year which he was receiving prior to retirement.

The entire cost of the retirement benefits provided for the decedent under the plan was borne by the employer. The net amount of that cost was $218,353.37. The last payment by the employer to the insurance company was made on January 1, 1934, at which time the annuity contract for the decedent became fully paid. Thereafter it was not subject to any change by the employer.

The Commissioner determined "that the gross estate should be increased by the sum of $78,036.00, the comparable cost of a survivorship annuity payable to the decedent's widow under Group Contract No. 103, Certificate No. A–12, of Metropolitan Life Insurance Company."

The only contention of the respondent is that the decedent, by reducing his own annuity and providing that an annuity of $7,000

should continue by payments to his widow after his death, made a transfer within the meaning of section 811 (c). Section 811 (c) provides that the value of the gross estate shall include "the value at the time of his death of all property * * * to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, * * * intended to take effect in possession or enjoyment at or after his death, or * * * under which he has retained for his life * * * the right to the income from, the property * * *." The respondent cites and relies upon *Commissioner* v. *Wilder's Estate*, 118 Fed. (2d) 281; certiorari denied, 314 U. S. 634; *Commissioner* v. *Clise*, 122 Fed. (2d) 998; certiorari denied, 315 U. S. 821, reversing 41 B. T. A. 820; and *Mearkle's Estate* v. *Commissioner*, 129 Fed. (2d) 386, affirming 45 B. T. A. 894. Those cases represent decisions by the Fifth, Ninth, and Third Circuit Courts of Appeals. Judge Garrecht discussed the general subject at considerable length in the *Clise* case. He held that the transfers were incomplete until the death of the first annuitant, which "caused a shifting, or the completion of a shifting of an economic benefit of property, which is the subject of a death tax." He quoted the following, *inter alia*, from *Helvering* v. *Hallock*, 309 U. S. 106: "By bringing into the gross estate at his death that which the settlor gave contingently upon it, this Court fastened on the vital factor," and concluded that "in the light of the *Hallock* case the transfers were 'too much akin to testamentary dispositions not to be subjected to the same excise.' " The Board of Tax Appeals at first took a different view, but, after being reversed in the first two cases, fell in line with the Circuit Courts in the last one.

The petitioner would distinguish those cases upon the ground that there the survivorship annuity for the second annuitant had been purchased by the first annuitant with his own funds, whereas here the purchase was made by the employer of the first annuitant. Although that difference exists and the purchase by the decedent was mentioned, nevertheless, that difference does not distinguish the cases. The transfer made by this decedent was just as much a transfer within section 811 (c) as those made in the three cases cited. The cost of the annuity here in question was fully paid by January 1, 1934. Thereafter the decedent possessed property in the paid-up annuity. He was then of retirement age under the plan, but he chose not to retire until January 1, 1935. He had a right under the paid-up annuity to receive $21,750 annually during his life. He could have retained all of that right had he so chosen. He exercised an option which he had under the paid-up annuity to surrender the right to receive a part of the annuity of $21,750 in consideration of the agreement on the part of the insurance company that it would continue to pay $7,000 annually to his wife for her life,

beginning at his death, should she survive him. That option was exercised before the date on which he was to receive the first payment under the paid-up annuity. The exercise of that option deprived him of money which he otherwise would have received during his life and effected a transfer to his wife of an interest in the annuity. The point is decided for the respondent, since no distinction in principle between the present case and the cases cited by the respondent appears. Cf. *Estate of William L. Nevin*, 11 T. C. 59. The question of how the receipt of each annual payment by the widow should be treated for income tax purposes is not involved or decided, but no doubt recognition would be given in such a case to the fact that the transfer was taxed for estate tax purposes to the decedent.

The remaining question for decision is "the value at the time of his death" of the transferred property. The transferred property was not an annuity for the life of the widow, but was a survivorship annuity payable to her for that part of her life after his death, upon condition that she survive him. The petitioner argues that $23,935.56 is the most which can be included in the decedent's gross estate. That amount represents the actual reduction in the decedent's annuity up to the time of his death resulting from his election to take less for himself and thus create an annuity for his wife. Obviously, that amount does not measure the value of the transferred property at the date of the death of the decedent. The petitioner suggests $33,867.86 as an alternative. It argues that the $78,036 included by the Commissioner, although described in the notice of deficiency as the comparable cost of a survivorship annuity as of the date of her husband's death, is in fact not that at all, but the cost of a single life annuity, which does not take into consideration the factor of survivorship. It claims that the cost of a survivorship policy on the day of the death of the decedent, using his life expectancy and that of his wife, would have been $33,867.86. This whole contention must fail for lack of proof. The Court has no way of knowing from the record the true value of a survivorship annuity on the day of death. Since no fault appears in the value determined by the Commissioner, his determination must stand. *Mearkle's Estate, supra.*

Reviewed by the Court.

*Decision will be entered under Rule 50.*

HILL, *J.*, dissenting: Election by decedent to accept a lesser annuity for himself so his wife might receive a survivorship annuity of $7,000 did not, in my view, constitute a transfer of property by him falling within the provisions of section 811 (c) of the code. At the time of his election decedent held only a vested option to choose between two an-

nuity retirement plans by virtue of Group Contract No. 103 between Socony-Vacuum Oil Co. and the Metropolitan Life Insurance Co. The first plan provided decedent with $21,750 annuity for life upon his retirement. The second plan provided a lesser annuity for decedent which would be continued after his death to a designated dependent should such person survive him. Prior to the normal date of decedent's retirement, namely, January 1, 1934, the obligation of the insurance company to pay decedent an annuity of $21,750 was not absolute, but was subject to the election of decedent under authority of the contract to request that the full retirement benefits be paid only in part to him and in part to his wife in succession. At the time of his election decedent did not have a specific property interest in either type of retirement annuity. Thus his choice of a lesser annuity for himself with a survivorship annuity of $7,000 for his wife could not operate as a transfer of property by him to Mrs. Higgs, but constituted merely the relinquishment of his right to select the larger annuity for himself alone.

In no sense may the election by decedent be considered a surrender of the larger annuity for a small annuity, for he had no ownership over the larger annuity at the time. There is no basis in law for the proposition that he constructively received the full annuity and then returned part of it to the insurance company in consideration for an annuity for his wife. Cf. *Charles L. Jones*, 2 T. C. 924, involving the same group contract and the identical option. Only by means of exercising the option did Higgs receive any property interest in a specific retirement annuity. To say that by the very act whereby he first received an interest in an annuity he at the same time transferred part interest in an alternative type of annuity to his wife is illogical. Certainly there was no formal conveyance of a part of an interest in an annuity by decedent to his wife, and it is difficult to see how this was accomplished indirectly when decedent merely exercised a right to accept one type of annuity over another.

Under comparable facts an analogous problem arose in *Brown* v. *Routzahn*, 63 Fed. (2d) 914; certiorari denied, 290 U. S. 641. In that case a donee rejected a testamentary gift before distribution of the estate, making the gift subject to a residuary trust, and the Court held this did not constitute a transfer under section 403 (c) of the Revenue Act of 1921 (comparable to section 811 (c) of the code). The cited case goes on the theory that there can be no transfer of an interest in property for purposes of the estate tax where there has been no prior receipt of the property by the alleged transferor, but merely receipt of an option to accept such property. It holds that the mere exercise of a choice does not constitute a transfer of property. The reasoning of the court in *Brown* v. *Routzahn*, *supra*, p. 916, applies

equally to the facts of the instant case and supports the conclusion I have reached:

> While it has been held that taxing statutes of this character concern themselves, not so much with title as with command over the property * * * we cannot think that within the scope of that purpose the statute here in question contemplates the taxing of the renunciation of testamentary gifts. Specifically stated, it is our view that, had Elizabeth Brown died in January of 1920, the renunciation here involved, made the following April, could not be held to be a transfer under the statute, even though it were made in contemplation of death. If in that case the renunciation would not be a transfer neither is it here. The decedent never owned nor had control of the property as donee. All that he had was a right to accept. Coupled with this right was an equal right to reject. * * * Its [the government's] right, as claimed, grew out of the act said to give rise to the tax liability, the exercise of an option. What it did was to collect a tax, not upon a transfer of an interest in property, but upon the exercise of a right to refuse a gift of property. This we think it had no right to do.

The right to a survivorship annuity which Mrs. Higgs acquired when decedent chose the lesser annuity for himself arose directly out of the original contract between the employer and the insurance company and not as a result of any separate transaction between decedent and the insurance company or between decedent and his wife which could be considered a transfer. This view is sustained by the conclusions reached by this Court in *Katharine C. Pierce*, 2 T. C. 832; affd., 146 Fed. (2d) 388, regarding an election made by a beneficiary of an insurance contract among several options granted her therein. The Court said (pp. 837–838):

> * * * Immediately upon the insured's death the petitioner was vested with several distinct and valuable property rights. *Latterman* v. *Guardian Life Insurance Co. of America*, 280 N. Y. 102; 19 N. E. (2d) 978. Among these rights was the right to demand a lump sum payment or to require the insurance company to pay her in accordance with one or more of the options. These property rights stem from the policy itself and not from the instrument in which she indicated her election under date of May 4, 1940. That instrument created no new rights. It merely advised the insurance company of her choice between her several rights, thus authorizing it to discharge its obligation to her in the manner stipulated in option C. Since the petitioner's rights flowed directly from the policy, it necessarily follows that all payments received by her in satisfaction of those rights were made by reason of the provisions of the policy which matured on the death of the insured.

See also *George H. Thornley*, 2 T. C. 220; reversed on other grounds, 147 Fed. (2d) 416; and *Law* v. *Rothensies*, 57 Fed. Supp. 447; affd., 155 Fed. (2d) 13.

Decedent's election did not change the insurance company's obligation to pay the full value of the retirement benefits provided in the contract in any manner. Regardless of whether decedent had chosen one or the other of the alternate retirement plans, the execution by the insurance company of the provision elected was incipiently required by its contract obligation. By his selection the obligation of

the insurance company became automatically fixed under the terms of the contract to pay only the specified reduced amount of the annuity to the decedent plus a complementary survivorship annuity to his wife. Such election by decedent operated, in accordance with the terms of the contract, to designate the method of payment in the annuity contract. Once selected, the method of payment chosen determined *ab initio* the contract, the annuitants, and the portion of the retirement benefits each was to receive. Conformably with such decision, the insurance company performed its contract with the employer, and the resulting payments first to Higgs and then to his wife were fruits from this same tree.

Nor did such election entail any additional consideration to cover the cost of the annuity for decedent's wife, since this was included in the original purchase price of the annuity contract paid for entirely by the employer. Notwithstanding this fact, the majority holding charges the cost thereof to decedent. No part of the purchase price money so paid was transferred by decedent to secure an annuity for his wife, for the obvious reason that he had no property right in or control over such purchase price. It was the payment for the annuity contract by the employer which effectuated the transfer of a property interest in an annuity to decedent's wife. Such purchase money became the sole property of the insurance company. Neither the Socony-Vacuum Oil Co. nor decedent had any property right in the money so paid, nor did such payment create an obligation of debt for repayment thereof in any form by the insurance company. *George H. Thornley, supra*, p. 233, and authorities cited therein.

After the exercise of the option by decedent, his wife was on an equal footing with him as an annuitant under and by virtue of the provisions of the annuity contract. No assignment or transfer by decedent to Mrs. Higgs of a property interest in the annuity contract or in the retirement benefits therein provided was required by the terms of the contract to be made or was made in order for the wife to acquire a survivorship annuity. In other words, decedent's wife received a survivorship annuity not by the assignment, transfer, purchase, or gift thereof by decedent, but solely from and under the provisions of the annuity contract between the employer and the insurance company. His choice of a lesser annuity simply served to designate and activate particular provisions of the contract.

Therefore, decedent did not by his election assign or transfer any property or interest in an annuity to or for the benefit of his wife. Thus, in my view, there was no transfer of property taxable in the gross estate of decedent under the provisions of section 811 (c) of the code.

ARUNDELL, ARNOLD, and HARRON, *JJ.*, agree with this dissent.