ESTATE OF MARY L. PRUYN, DECEASED, NELLIE K. PRUYN, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15236. Promulgated May 12, 1949.

*Harry Silverson, Esq.,* for the petitioner.
*Sheldon V. Ekman, Esq.,* for the respondent.

757

OPINION.

Opper, *Judge*: The first issue is whether by the purchase of an annuity prior to March 3, 1931, payable to herself for life and thereafter to a survivor, decedent made a transfer intended to take effect at death within the meaning of section 811 (c) of the code. Petitioner's reliance on this point in its brief filed before the decision in *Commissioner* v. *Estate of Church*, 335 U. S. 632, is placed primarily on *Estate of Mary H. Hughes*, 44 B. T. A. 1196, and its reversal in *Estate of Edward E. Bradley*, 1 T. C. 518. The *Hughes* case did indeed deal with a situation comparable to this one, that is, an annuity purchased prior to 1931; and it was disapproved in *Estate of Edward E. Bradley*, *supra*. Since, however, the treatment of *Estate of Mary H. Hughes*, *supra*, in the *Bradley* case was squarely rested upon *May* v. *Heiner*, 281 U. S. 238, and since that case has now been definitively repudiated by *Commissioner* v. *Estate of Church*, *supra*, we can not doubt that the same result is now required as that originally reached in the *Hughes* case. The consequence is that decedent's arrangement with the insurance companies whereby the transfer of her funds resulted in a postponement of the benefit conferred upon her sister until after decedent's death constituted a transfer, intended to take effect at death, of her property of which she retained the enjoyment during her lifetime. *Commissioner* v. *Wilder* (C. C. A., 5th Cir.), 118 Fed. (2d) 281; certiorari denied, 314 U. S. 634; *Commissioner* v. *Clise* (C. C. A., 9th Cir.), 122 Fed. (2d) 998; certiorari denied, 315 U. S. 821; *Mearkle's Estate*, 45 B. T. A. 894; affd. (C. C. A., 3d Cir.), 129 Fed. (2d) 386; *Estate of William J. Higgs*, 12 T. C. 280.

The suggestion that decedent received some, if not a full and adequate consideration for the interest transferred to her sister, cf. section 811 (i), Internal Revenue Code, must be rejected for several reasons. Notwithstanding that there was a reciprocal right in decedent to inherit from her sister, if the latter died first, a correspondingly increased annuity, this is now seen, in the light of facts known as of decedent's death, to have been actually worthless. Nothing ever passed to her during her lifetime, nor "augmented" her estate by reason of that inchoate possibility, see *Estate of F. A. Gray*, 44 B. T. A. 545, 548, certainly nothing which can be characterized as "money or money's worth." See *Commissioner* v. *Wemyss*, 324 U. S. 303; *Merrill* v. *Fahs*, 324 U. S. 308. Respondent is not attempting to tax any part of the payment made by the sister, nor, indeed, anything more than the actuarial value of the additional right acquired by the sister upon decedent's death. For this, it seems obvious, the sister paid nothing, since she continued to receive the annuity for which her own funds had been used, and would continue to receive it for the contem-

plated period of the remainder of her life. Thus, neither what was given by the sister nor received by decedent can be conceived of as consideration of any value whatever in money or money's worth for decedent's transfer.

More important still, the disposition by both sisters to each other was clearly testamentary. "* * * There was no attempt on the part of either * * * to exact each from the other a fair price for their respective conveyances." *Safe Deposit & Trust Co.* v. *Tait* (Dist. Ct., Md.), 295 Fed. 429. "* * * the transaction with its cross-transfers of property * * *, like the transaction in *Safe Deposit & Trust Co.* v. *Tait, supra*, was a family arrangement for the disposition of property * * * for the benefit of their joint estates and for the protection of themselves in different expectancies of life * * *. It savored far more of a testamentary disposition than of a bargain and sale such as the statute contemplates in relieving a decedent's estate from taxation." *Phillips* v. *Gnichtel* (C. C. A., 3d Cir.), 27 Fed. (2d) 662; certiorari denied, 278 U. S. 636; see also *Estate of Mollenberg* v. *Commissioner* (C. A., 2d Cir.), 173 Fed. (2d) 698. To say that decedent's right to inherit was a ponderable consideration for the corresponding right in the sister would put a construction on that concept totally at variance with the purpose and policy of the estate tax law. "It has * * * been held with reference to * * * section 302 (c) of the 1924 Act [predecessor of 811 (c)] that those transactions which are supported by a good consideration but which nevertheless are purely testamentary in their nature and effect are not sales for money or money's worth within the intent of the act." *Latty* v. *Commissioner* (C. C. A., 6th Cir.), 62 Fed. (2d) 952.

The problem of the extent to which the reversionary interest acquired by the sister upon decedent's death is to be valued presents the final issue. What the statute requires is inclusion of the value of the property transmitted on the date of death. This can best be established, as respondent's regulations suggest (Regulations 105, sec. 81.10 (i)) by reference to the cost of a comparable right to a beneficiary similarly situated. In accordance with his regulations respondent has used the cost, at decedent's death, of annuities, equal to one-half of those provided by the contract, payable to a woman the age of the survivor.

"It is now settled that for estate tax purposes a valuation of annuity contracts based upon replacement cost at the date of death is proper and reasonable. *Estate of Judson C. Welliver*, 8 T. C. 165; *Mearkle's Estate* v. *Commissioner*, 129 Fed. (2d) 386, affirming 45 B. T. A. 894. * * *" *Estate of John L. Walker*, 8 T. C. 1107, 1111.

The fact that not all insurance companies were prepared to issue comparable contracts is inconsequential, in view of the presence in the record of evidence of what would have been the cost for similar con-

tracts made by companies prepared to enter into identical arrangements. "* * * such cost of replacement * * * is the best available criterion of the value of the policies." *United States* v. *Ryerson*, 312 U. S. 260; see also *Guggenheim* v. *Rasquin*, 312 U. S. 254. The actual extent of the reversionary interest cut off by decedent's death is immaterial. The property passing to the beneficiary, valued as of the date of death, is what the statute covers.

In order to escape inclusion, a transaction must effect " 'a bona fide transfer * * * after [which] * * * the settlor must be left with no * * * right to possess or enjoy the property then or thereafter.' " *Estate of Spiegel* v. *Commissioner*, 335 U. S. 701. "Inclusion * * * is not dependent upon the value of the reversionary interest. The question is not how much is the value of a reservation, but whether * * * some present or contingent right or interest in the property still remains in the settlor * * * " Op. cit. 707. And the characterization of the original contract as a "survivorship annuity" at best leaves other elements of valuation as speculative. Petitioner has not sustained its burden of proving respondent's figure incorrect. *Mearkle's Estate* v. *Commissioner*, *supra*; *Estate of William J. Higgs*, *supra*.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

MURDOCK, *J.*, concurring: I agree with Judge Arundell on the method of valuing the transferred property to be included in the gross estate of the decedent, but I agree with the majority in holding that some amount should be included in the gross estate. Each of these two sisters paid approximately one-half of the premiums for joint and survivorship annuities under which the contracting companies agreed to pay them certain amounts annually during their joint lives and the same amount to the survivor as long as she might live. A part of the consideration paid by each was for the survivorship benefits. The actual survivor benefited not only from that portion of the survivorship feature purchased by her, but also from that portion purchased by her sister. The purchase by the deceased sister of a part of the survivorship benefits represents a transfer which should be included in her gross estate.

---

ARUNDELL, *J.*, dissenting: I agree with Judge Johnson's dissenting opinion.

Should we accept, however, the theory of the majority opinion, it seems to me that the measure of the value of the survivorship annuity is not the cost of an annuity for the survivor purchased on the date of death of the decedent and immediately after her death, but what

the decedent would have paid prior to her death but on the date of her death for a policy payable to her sister for the latter's life provided she should survive decedent. As stated in the *Estate of William J. Higgs*, 12 T. C. 280: "The transferred property was not an annuity for the life of the widow, but was a survivorship annuity payable to her for that part of her life after his death, upon condition that she survive him." What is taxed in the instant case is "the cost of a single life annuity, which does not take into consideration the factor of survivorship." *Estate of William J. Higgs, supra.* As the cost of such a single life policy is in excess of the cost of a survivorship policy, the method of valuation adopted by the Commissioner and approved by the majority is in my opinion wrong.

———

JOHNSON, J., dissenting: Although each sister paid half the cost of the joint and survivor annuity contracts, the majority holds that the value of the survivor's right to half the annuities payable to her after decedent's death should be included in decedent's gross estate. They reason that "in the light of facts known as of decedent's death" the survivor paid nothing for this right and that decedent's "disposition" of it was "clearly testamentary."

I am unable to agree with these views. Each sister purchased by a payment of half the premiums not only a joint annuity during the joint lives of the two, but also a survivor annuity contingent upon survival. Obviously only one of them could benefit from this latter right, but each paid for the chance and each acquired it by contract from third parties. Of course what the decedent bought was worthless "in the light of facts known as of decedent's death," but so is a fire insurance policy if the premises covered are unburned at its expiration. I fail to see in the ripening of the survivor's right here by the happening of the contingency any "disposition" of it by decedent that was testamentary or otherwise. The right was contractual in its origin, and dying first, decedent never even acquired it so that she could not transmit it by death.