ESTATE OF FREDERICK JOHN TWOGOOD, DECEASED, FRANCES F. TWOGOOD, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20638. Promulgated December 29, 1950.

*Logan Fulrath, Esq.*, for the petitioner.
*Pershing W. Burgard, Esq.*, for the respondent.

OPINION.

Van Fossan, *Judge:* The primary issue in this case is whether or not the decedent made a transfer under the provisions of section 811 (c) of the Internal Revenue Code. The pertinent parts of section 811 (c), as amended by P. L. 378 (1949) and made applicable by section 7 (b) thereof to estates of decedents dying after February 10, 1939, are set out in the margin.[1]

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated except real property situated outside of the United States.—

\* \* \* \* \* \*

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH.—

(1) GENERAL RULE.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

(A) in contemplation of his death. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter; or

(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; or

(C) intended to take effect in possession or enjoyment at or after his death.

(2) TRANFERS TAKING EFFECT AT DEATH—TRANSFERS PRIOR TO OCTOBER 8, 1949.—An interest in property of which the decedent made a transfer, on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate under paragraph (1) (C) of this subsection unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property. For the purposes of this paragraph, the term "reversionary interest" includes a possibility that property transferred by the decedent (A) may return to him or his estate, or (B) may be subject to a power of disposition by him, but such term does not include a possibility that the income alone from such property may return to him or become subject to a power of disposition by him. The value of reversionary interest immediately before the death of the decedent shall be determined (without regard to the fact of the decedent's death) by usual methods of valuation, including the use of tables of mortality and actuarial principles, pursuant to regulations prescribed by the commissioner with the approval of the secretary. In determining the value of a possibility that property may be subject to a power of disposition by the decedent, such possibility shall be valued as if it were a possibility that such property may return to the decedent or his estate.

(3) TRANSFERS TAKING EFFECT AT DEATH—TRANSFERS AFTER OCTOBER 7, 1949.—\* \* \*

\* \* \* \* \* \*

The decedent worked for a company which provided by a pension plan for the retirement of its employees. All but a small part of the cost of this plan was paid by the employer. The decedent was entitled to retire on a pension after 30 years of continuous foreign service for the employer. The Plan contained an option provision whereby the employee could elect, prior to his retirement, to take a lesser annuity on retirement and if the employee's designated beneficiary survived him that beneficiary would also receive an annuity for life. This option was exercised by the decedent in 1937, 5 years prior to his retirement date.

During 1938 decedent and his wife entered into a valid contract for good and valuable consideration by which, *inter alia*, he agreed not to change the designation of his then wife as his dependent annuitant. He completed his 30 years service and retired. He received payments on his retirement annuity until his death. Thereupon annuity payments were begun to the designated dependent beneficiary. The question is whether the decedent made a transfer under section 811 (c) of the commuted value of the annuity received by his beneficiary.

It is appropriate to mention first the manner in which the parties have presented the litigated question. The case was heard on November 30, 1949; the amendment to section 811 (c) referred to herein was approved October 25, 1949. The respondent in his notice of deficiency and on brief stated that the decedent made a transfer under section 811 (c). The petitioner on brief has argued the applicability of section 811 (c) (1) (B) and (C). The respondent on brief makes no formal concession as to the inapplicability of any part of section 811 (c) but argues that section 811 (c) (1) (B) is unaffected by section 811 (c) (2). The respondent relies chiefly on *Estate of William J. Higgs*, 12 T. C. 280 which case was reversed in CA-3, 184 Fed. (2d) 427, since argument on the instant case was concluded. Because of the vague manner in which the ultimate issue has been framed and the nature of the authority on which the disposition of this case will largely rest, we deem it necessary to extend somewhat the scope of the argument of the parties. The question demands first an inquiry into the nature of what the decedent and the beneficiary had before and after the exercise of the option and, following that, what the beneficiary received on the decedent's death.

If the decedent continued to work for the full 30 years, his rights under the pension plan would ripen into an annuity which he would receive for the rest of his life. Prior to retirement, however, the benefits which he would receive in the future, beginning at retirement, were property rights, albeit they were conditioned on his continuing life and employment. This property was of a single but divisible form. In electing to receive less of this property on his retirement, the decedent divided the property into two parts, one of which he

retained, the other he transferred to his beneficiary who could enjoy it only if she survived the decedent. If the beneficiary predeceased the decedent, the property so transferred was lost and it could not, under any circumstances, ever return to the decedent. The decedent's lesser annuity which he retained would in no way be augmented by the death of the beneficiary. On the death of the decedent after his retirement his wife surviving him, all of the conditions precedent to the enjoyment of the beneficiary's annuity had been removed. If the decedent had died prior to retiring, his estate would have received only $8,616, the amount of his contribution to the fund under the Plan.

It must be remembered that the property with which we are concerned here consisted of the right to receive an annuity. The division effected by decedent in electing to take a lesser annuity was a division of the *property itself*, part of which was the subject of the transfer—not the use by him for his life of only part of the *income* from the property.

In considering and applying the subject section of the Code, 811 (c), we can first dispose of the exception in the "General Rule" that a transfer does not come within its provisions if it was a "bona fide sale for an adequate and full consideration in money or money's worth * * *" The petitioner makes some effort to exclude the transfer on that ground contending that the election, to the extent that it is deemed to be a transfer of property, was founded upon the separation agreement made between the decedent and his wife who had been elected as his beneficiary. The election was made some nine months prior to the separation agreement by the terms of which the decedent merely agreed not to *change* the election previously made. Therefore, the election (and to that extent, the transfer) was not made for "an adequate and full consideration."

It is apparent that section 811 (c) (1) (A) cannot apply because the transfer in question was neither alleged nor shown to have been a transfer within the ordinary meaning of the "contemplation of death" provision.

The next section to be examined is 811 (c) (1) (B). The question first presented here is whether the decedent "retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, * * *." It is clear that the decedent did not possess or enjoy in any way the property transferred to the beneficiary. The reduced annuity which the decedent retained could never again be affected by what he transferred. The decedent left no strings attached to the property. He did not and, in fact, could not (because of the collateral agreement not to change the beneficiary designation) ever possess or enjoy the property transferred. Likewise, he did not

retain *possession* or *enjoyment* of the *income* from such property. The annuity payments which the decedent received after his retirement did not flow from or have any relation to the property transferred. Such annuity payments—the property transferred—were irretrievably lost to decedent. In order for the decedent to have retained the income from property transferred, he must have made a transfer to the beneficiary of income yielding property, the income from which he reserved for his life. This manifestly he did not do, either from a legalistic analysis of the mechanics of the transaction or from a realistic view of the true nature of the transfer.

The query next arises, still under this section 811 (c) (1) (B), whether the decedent retained "* * * (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; * * *." To state this question is, in this case, to answer it. If further discussion is indicated, however, it can be said that having made the election and collaterally having made it irrevocable, the decedent removed the possibility that any one except the named beneficiary would enjoy the property or its income. The decedent designated who would enjoy the property when he transferred it. He did not retain the right so to do.

The remaining question is whether the decedent made a transfer which, in the language of section 811 (c), was "intended to take effect in possession or enjoyment at or after his death." We believe the answer to the question thus limited should be in the affirmative if our premise above is correct, that "the benefits which he would receive in the future, beginning at retirement, were property rights." The only way in which the beneficiary could and did possess or enjoy the property was by surviving the decedent. The decedent accomplished by this transfer a testamentary disposition of property which but for the transfer he would have been free to enjoy during his life. This was such an estate passing at death as to bring it within the language of section 811 (c) (1) (C). So to hold, however, is not an end of the matter. Applying section 811 (c) (2), as we must, we find that it requires in unequivocal terms, that in order for the property to be included in the decedent's gross estate under section 811 (c) (1) (C) as a transfer to take effect in possession or enjoyment at or after the decedent's death he must have retained a reversionary interest in the property arising by the express terms of the instrument of transfer and not by operation of law, and further, the value of such reversionary interest immediately before the death of the decedent must exceed 5 per centum of the value of the property transferred. This qualification to section 811 (c) (1) (C) requiring a reversionary interest applies to transfers prior to October 8, 1949, and is, therefore, pertinent to the present inquiry.

No reversionary interest was retained by the decedent in the property transferred here. Under no circumstances could any part of what the decedent transferred ever revert to him or his estate. Having made the election irrevocable, his beneficiary was the only one who could ever enjoy the property. If she failed to survive decedent, the property was lost to both the parties concerned or to those who might take through them. Thus it is that, there being no reversionary interest as required by section 811 (c) (2), there can be no application of section 811 (c) (1) (C).

In order to present the several points in our opinion above in a certain sequence and because of differences in approaching the same result as reached by the Court of Appeals in reversing the Tax Court in *Estate of William J. Higgs, supra*, we have left until last our discussion of that case. *Higgs* and the instant case differ only in the following aspects:

(1) Higgs contributed nothing to the cost of his annuity whereas Twogood contributed $8,616.

(2) Higgs was eligible to retire when the election was made whereas Twogood made the election in 1937 and was not eligible to retire until 1942.

(3) Twogood agreed collaterally not to change the election so made. Higgs made no such agreement. (We have already disposed of the argument that the Twogood transfer was for a valid consideration.)

In all other respects the facts are similar, that is, the same Group Contract No. 103, the same underwriter, and the same contract terms. The Tax Court held in *Higgs* that the arrangement was a transfer within section 811 (c) following *Commissioner* v. *Wilder's Estate*, 118 Fed. (2d) 281, certiorari denied, 314 U. S. 634; *Commissioner* v. *Clise*, 122 Fed. (2d) 998, certiorari denied, 315 U. S. 821; and *Mearkle's Estate* v. *Commissioner*, 129 Fed. (2d) 386.[2] The Third Circuit in reversing *Higgs* distinguished the above-cited cases as follows:

The fact which distinguishes the present case from Commissioner v. Wilder's Estate, supra, Commissioner v. Clise, supra, and Mearkle's Estate v. Commissioner, supra, is that in each of these the decedent transferred property to the insurance company in purchase of an annuity for himself to be continued upon his death to his designated beneficiary, the beneficiary surviving. In the case at bar, however, there was no such transfer by the decedent, for the annuity contract was purchased by his employer. Without the option, the decedent had only a life interest under the contract made by his employer, contingent of course only upon his retirement, since he had already satisfied the retirement

---

[2] These three cases and *Higgs* were also relied upon in *Estate of Mary L. Pruyn*, 12 T. C. 754. That case was also decided prior to the 1949 amendment of section 811 (c), and was reversed by the Court of Appeals for the Second Circuit on November 3, 1950. There the decedent and her younger sister purchased survivor annuity contracts from commercial companies, each paying one-half of the consideration. It was held, on appeal, that the decedent had retained no reversionary interest in what the surviving sister received on decedent's death.

requirements. With the option, he had only a right to reduce his annuity in order to provide the annuity for his wife.

The Circuit Court further reasoned that:

We do not think it realistic to find that the decedent reserved to himself under the instrument of transfer (the exercised option), an interest for his lifetime in the "property" transferred to his wife, just because he did not (and perhaps could not) transfer his whole interest to her by depriving himself of any annuity whatsoever. The annuity which the decedent had was the inevitable result, not of the incidental exercise of the option, but of the contract which was arranged by and between his employer and the insurance company pursuant to which he was entitled to an annuity in any event.

We have reached the same result in our discussion under section 811 (c) (1) (B) but on the theory that the decedent's right to receive an annuity *was property*, part of which he transferred to his wife, and that what decedent received under the annuity "did not flow from or have any relation to the property transferred"; therefore, the decedent made no transfer "of income yielding property the income of which he reserved for his life."

We have concluded above that the decedent could not have retained a reversionary interest in the property which he transferred to his wife. In the *Higgs* case, on appeal, the Commissioner conceded that no reversionary interest existed in the decedent from his similar annuity. Although we might conclude that the question as to section 811 (c) (1) (C), requiring a reversionary interest, has been abandoned by the Commissioner in this case, we have no such formal concession and for purposes of exposition in our opinion, we have set out in detail our reasons for arriving at the same result as did the Court of Appeals in *Higgs* where they say that it was conceded *"and properly*, that no reversionary interest is involved so as to bring this case within Section 811 (c) (1) (C), that is, a transfer intended to take effect at death as that Section is extenuated by Section 811 (c) (2)." [Emphasis added.]

The Court of Appeals does not find it necessary to deal with the question of whether the decedent's right to receive an annuity was property but preferred to conclude that "assuming a transfer of property, there was no such a transfer within the express meaning of Section 811 (c) as amended in 1949." As we have pointed out above, it is our opinion that the right to receive an annuity is property albeit receipt is conditioned on survivorship or continued employment. While the results which follow that view bring us to the same conclusion as reached by the Third Circuit, we have felt constrained to set out, as above, our approach to the problem.

We hold that the decedent did not make a transfer within the meaning of section 811 (c) of the Code as amended by P. L. 378 (1949) in electing to receive a reduced annuity.

Several minor issues have been settled by stipulation.
Reviewed by the Court.

*Decision will be entered under Rule 50.*

KERN and ARUNDELL, *JJ.*, concur only in the result.

MURDOCK, *J.*, concurring: We held in *Estate of William J. Higgs,*
12 T. C. 280, that the transfer to a wife of a survivorship interest in
an annuity was a transfer within the meaning of section 811 (c).
Since then, the law has been changed to require that the transferor
must retain a reversionary interest if the transfer is to be taxable under
section 811 (c). In the *Higgs* case, as in the present case, the trans-
feror retained no reversionary interest. Therefore, in neither case,
under the present law, would the transfer be taxable under 811 (c).

LEECH, *J.*, agrees with this concurring opinion.