In the Matter of the Estate of HERMAN K. ENDEMANN, Deceased.

Surrogate's Court, Queens County, July 31, 1951, on reargument, November 7, 1951.

**1078**

*Carleton H. Endemann* for Sarah H. Endemann, as executrix of Herman K. Endemann, deceased, appellant.

*Fred M. Ahern, Albert Dorf* and *Leon Shaw* for State Tax Commission, respondent.

*Albert Dorf, Mortimer M. Kassell* and *Francis Kelliher* for State Tax Commission, respondent, on reargument.

SAVARESE, S. This is an appeal by the executrix of the will of Herman K. Endemann from the *pro forma* order fixing the New York State estate tax. Appellant, testator's widow, contends that the appraiser erroneously included in the gross estate the sum of $8,572 representing the estimated value of a life annuity of $1,570.20 payable to appellant from the date of testator's death on November 4, 1947, pursuant to a designation made by him at the time of his retirement as an employee of the City of

New York on October 1, 1936. As a city employee it was mandatory for the testator to be a member of its employees' retirement system, and the contributions from his salary were, with an insignificant exception, compulsory.

On retirement, the accumulated deductions from testator's salary, with interest, had produced an " annuity reserve " of $5,373.36, while the contributions of the City of New York, with interest, had produced a " pension reserve " of $28,809.68. These reserves entitled the testator to a combined " retirement allowance " of $3,747.69 for life. In lieu thereof he was entitled to elect any one of four actuarially equivalent methods of receiving his retirement benefits. (Administrative Code of City of New York, § B3–46.0.) Option 1 provides a cash refund annuity whereby the retired employee receives a lesser sum annually, and the difference, if any, between what is paid to him and his initial annuity and pension reserves is payable at his death to a beneficiary named by him. Option 2 is a joint and survivorship annuity whereby the retired employee receives a lesser sum annually which is continued to be paid to a designated beneficiary for life if the latter survives the employee. Option 3 is also a joint and survivorship annuity, but here the beneficiary receives one half the employee's annuity. Option 4 provides a lesser annuity for the employee's life coupled with lump sum, insurance, annuities, or a combination of benefits on his death for designated persons. Under options 1 and 4 the beneficiary designations are revocable by the employee up to the time of his death. Under options 2 and 3, however, the designations are irrevocable once made. (*Hetherington* v. *O'Dwyer,* 272 App. Div. 919, revg. 186 Misc. 316; *Marks* v. *La Guardia,* 31 N. Y. S. 2d 336, 351, mod. and affd. 262 App. Div. 709, affd. 286 N. Y. 625.)

On his retirement testator herein elected option 3. He thus became entitled to receive $3,140.60 annually for his life and at his death his wife as named beneficiary became irrevocably entitled to receive $1,570.20 annually for her life if she survived him. At retirement testator was sixty-four years of age and his wife was sixty-two. On his death she was seventy-three. Based on the Actuaries' Combined Experience Table of Mortality, with interest at 4%, the present value of $1 due at the end of each year during the life of a person aged seventy-three is $5.45928. Thus the value of the widow's annuity herein has been estimated at $1,570.20 times $5.45928, or $8,572.06. As the estate is in the 1% tax bracket the sum involved on this appeal is $85.72.

Briefly the State Tax Commission contends that the estimated value of the widow's right to receive $1,570.20 for her life as of the date of testator's death is includible in the gross estate as " property " of which the testator in 1936 made a " transfer * * * intended to take effect in possession or enjoyment at or after his death." (Tax Law, § 249-r, subd. 3.) Appellant argues that decedent had no " property " in his widow's annuity, that he made no " transfer ", that nothing passed at his death, and that he retained nothing in his lifetime.

Does article 10-C of the Tax Law require the inclusion of the value of this annuity in the testator's gross taxable estate? If so, has the appraiser correctly valued the annuity and has the tax been constitutionally levied in this case?

The court holds that article 10-C of the Tax Law requires the inclusion of the value of the widow's annuity in the gross taxable estate. True it is that testator could not reach the reserves during his period of employment, that his contributions were automatically deducted from his pay, that he could not assign or will the funds, and that they were free from execution, garnishment, or attachment. (Administrative Code, § B3–50.0.) Despite these restrictions testator owned something of value. He had the right to withdraw his contributions upon leaving city employment. (Administrative Code, § B3–29.0.) He also had the right to a retirement allowance for himself and limited privileges which he could exercise for the benefit of others. (Administrative Code, § B3–46.0.) These were valuable legal and economic rights, so valuable that many persons are attracted to municipal employment because of them. These rights constituted intangible personal property within the meaning of section 249-r of the Tax Law.

It is difficult to understand how the selection of option 3 by the testator was not a " transfer " of a portion of his property rights in the reserve funds. If he had selected no option, there would have been no transfer and there would have been nothing taxable in his estate. This would be so because his full retirement allowance of $3,747.69 would cease upon his death. Nothing would be generated by that event. But by choosing to receive the lesser amount of $3,140.60 for his life, he created irrevocably in his wife the right to receive $1,570.20 for her life upon his death contingent upon her survival. In short, he exchanged his right to $607.09 of annual income for his life for an income of $1,570.20 for her life if she survived him. His act of electing option 3 was equivalent to a division of the property interests

he had into two parts, one for himself and one for his wife.  To hold that this was not a " transfer " of property to or for her benefit would be to ignore reality.

It is clear, too, that something of value was generated by and at the moment of testator's death.  At that instant the previously contingent right which his wife had ripened into certainty.  If she predeceased him, the right would have been extinguished and worthless.  But she did not, and it became real and valuable.

It is true that testator retained nothing with respect to his wife's annuity once he made his election.  But that is not the sole test of taxability under the statute.  It is sufficient to attract an estate tax that a transfer has been made which will benefit others upon the death of the transferor.  *(Estate of Spiegel* v. *Commissioner of Internal Revenue,* 335 U. S. 701; *Commissioner of Internal Revenue* v. *Estate of Church,* 335 U. S. 632; *Helvering* v. *Hallock,* 309 U. S. 106.)  This principle has been applied in cases involving commercial and private pension plan annuities.  *(Estate of Mearkle* v. *Commissioner of Internal Revenue,* 129 F. 2d 386; *Commissioner of Internal Revenue* v. *Clise,* 122 F. 2d 998, certiorari denied 315 U. S. 821; *Commissioner of Internal Revenue* v. *Estate of Wilder,* 118 F. 2d 281, certiorari denied 314 U. S. 634; *Estate of Higgs* v. *Commissioner of Internal Revenue,* 12 T. C. 280, revd. on other grounds 184 F. 2d 427; *Estate of Pruyn* v. *Commissioner of Internal Revenue,* 12 T. C. 754, revd. on other grounds 184 F. 2d 971; *Matter of Sothern,* 170 Misc. 805, affd. 257 App. Div. 574; see Meisenholder, Taxation of Annuity Contracts Under Estate and Inheritance Taxes, 39 Mich. L. Rev. 856; Note, 48 Col. L. Rev. 393.  Accord, *Matter of Newton,* 177 Misc. 877, affd. 267 App. Div. 913, affd. 294 N. Y. 687; *Kernochen* v. *United States,* 89 Ct. Cl. 507, 29 F. Supp. 860, certiorari denied 309 U. S. 675; *Estate of Twogood,* 15 T. C. 989.  Contra, *Dimock* v. *Corwin,* 19 F. Supp. 56, affd. on other grounds 99 F. 2d 799, affd. 306 U. S. 363; *Matter of Wilson,* 143 Misc. 742.)

Cases involving commercial annuities are analogous and persuasive.  One who buys an annuity from an insurance company, of course, has far more freedom of choice than an employee who is a member of a pension plan, especially where the latter's membership is a condition of his employment.  The commercial annuitant pays full value from his pocket, and has the opportunity to provide for the tax consequences of his act.  A retiring employee who elects an annuity for his beneficiary withdraws nothing from funds to which he has title and may well be in no position financially to guard against the tax impact of his

decision. Nevertheless the difference between a commercial annuity and a pension plan annuity seems to be one of degree rather than of kind. Both are in a real sense chosen and paid for by the decedent. There is nothing in the Tax Law or in the cases which would warrant this court in drawing a distinction between the two types of annuities for estate tax purposes. Hard cases may arise in which, for example, the only taxable asset is an annuity, and the annuitant may survive for a period much shorter than her expectancy, with the result that a substantial tax would be imposed for what turned out to be a small benefit. But whether there should be general estate tax relief for surviving annuitants, or at least a correlation with the income tax laws are matters for the Legislature to consider.

Two recent tax court cases imposing an estate tax upon joint and survivorship annuities were reversed by the Circuit Courts of Appeal because of the enactment on October 25, 1949, of the Technical Changes Act (63 U. S. Stat. 891, 894). (*Estate of Higgs* v. *Commissioner of Internal Revenue,* 184 F. 2d 427, revg. 12 T. C. 280, *supra; Estate of Pruyn* v. *Commissioner of Internal Revenue,* 184 F. 2d 971, revg. 12 T. C. 754, *supra.*) But the retroactive tax forgiveness features of that act were not carried over into the similar New York State statute (L. 1950, ch. 683) because of section 8 of article VII of the New York State Constitution, which prohibits giving away State money for private purposes. (*Matter of Harbord,* 201 Misc. 358, and authorities there cited.)

Although the right of a person to a pension, annuity, or retirement allowance is specifically exempted from any State or municipal tax by section B3–50.0 of the Administrative Code of the City of New York (formerly Greater New York Charter, § 1723, originally enacted by L. 1920, ch. 427), and although the payments to appellant are a continuation of testator's retirement allowance (Administrative Code, § B3–46.0), it has been held that section 249-kk of the Tax Law (enacted by L. 1930, ch. 710) has impliedly repealed the estate tax exemptions contained in the Administrative Code as well as those in the Civil Service Law. (*Matter of Newton,* 177 Misc. 877, affd. 267 App. Div. 913, affd. 294 N. Y. 687, *supra* [Administrative Code, § B20–48.0]; *Matter of O'Donnell,* 153 Misc. 480 [Administrative Code, § B3–50.0]; *Matter of Riegelmann,* 178 Misc. 475 [former Civil Service Law, § 70]; *Matter of Moore,* 178 Misc. 1010 [former Civil Service Law, § 70].) This view is confirmed by reference to chapter 841 of the Laws of 1947, which replaced

former section 70 of the Civil Service Law by a newly numbered section 91. Section 70 of the Civil Service Law made pension rights created by that law " exempt from any state or municipal tax, including transfer or inheritance tax ". The new section 91 makes pension rights " exempt from any state or municipal tax, except the estate tax ". The Legislative Note indicates that the new section 91 is derived from former section 70 and section 249-kk of the Tax Law. Although the analogous Administrative Code sections have never been conformed to section 249-kk of the Tax Law, the action of the 1947 Legislature indicates that it believed section 249-kk had impliedly repealed the estate tax exemption of pension rights as held in the *Newton, O'Donnell, Riegelmann,* and *Moore* cases (*supra*).

Passing to the question of valuation, it is my opinion that the appraiser has erroneously calculated the value of the widow's annuity. He has estimated the value of an immediate single life annuity for a person aged seventy-three. But what the testator gave his wife in 1936 was a deferred or survivorship annuity. He then gave her the right to receive $1,570.20 per year for her life starting at his death if she survived him. It is the value of that right at his death in 1947 that must be estimated. There is a substantial difference between the right of a person aged seventy-three to receive $1,570.20 per year for her life beginning at once, and the right of such person to receive that stipend starting on the death of a man aged seventy-five. The former may be the value of the annuity in the hands of the widow after the decedent's death; the latter is its value in the decedent's estate. In the *Higgs* case (12 T. C. 280, *supra*) the Tax Court initially, on procedural grounds, accepted the commissioner's figure of $78,036 based on the value of an immediate single life annuity, but later revised its decision to accept the lower figure of $33,867.86 based on the value of a survivorship annuity. The commissioner did not appeal from that revision. (See *Estate of Higgs* v. *Commissioner of Internal Revenue,* 184 F. 2d 427, 428, *supra,* note 1, and Bliss, " Widows' Pension Plan and the Higgs' Case ", Proceedings of the Eighth Annual Institute on Federal Taxation, New York University [1949], pp. 376–384.) Assuming that a tax is due in this case the court would remit the matter to the appraiser for a revaluation of the asset by the State Superintendent of Insurance. (See *Matter of Keenan,* 302 N. Y. 417, 422–423, and Tax Law, § 249-v.)

The conclusion that the statutes require the inclusion of the value of the widow's annuity in her husband's gross taxable

estate compels the court to consider the constitutionality of such a tax. The Constitution of 1938, effective January 1, 1939, for the first time expressly provided that '' All salaries, wages and other compensation, except pensions, paid to officers and employees of the state and its subdivisions and agencies shall be subject to taxation.'' (N. Y. Const, art. XVI, § 5.) At the Constitutional Convention the Chairman of the Committee on Taxation in introducing the proposed section stated: '' All [it] does is to write into the Constitution a principle that is now in the tax law of the State, which will require that the salaries and wages and other compensation paid officers and employees of the State and its subdivisions shall be brought in under the income tax.'' (II New York State Constitutional Convention of 1938, Revised Record, p. 1119.) As introduced the words '' except pensions '' did not appear. At page 1120 of the Revised Record of said convention, the sponsor of the proposed section was asked: ''Under this provision, ' Salaries, wages, and other compensation paid to officers and employees of the State,' do you include pensions of retired officers or State employees? '' The answer was: '' This only applies to officers and employees. No, I assume when a man becomes a pensioner, he is no longer an officer or employee.'' Despite this assurance, an amendment adding the words '' except pensions '' after the word '' compensation '' was adopted by a voice vote at page 1133 of the Revised Record. There was no further recorded discussion, and the proposed section as amended, was finally carried at page 2471 (Vol. III).

Section 5 of article XVI of the Constitution has been considered by the courts only once. In *Matter of Riegelmann* (178 Misc. 475, 478, *supra*) the late Surrogate McGAREY, who was a delegate to the Constitutional Convention of 1938, held that it did not exempt from estate taxation the unexpended reserve payable by decedent's direction to his estate pursuant to an option selected by him on retirement. He reasoned that '' A pension does not include the unexpended reserve due upon the death of a member of the New York State Employees' Retirement System. A pension presupposes the continued life of the recipient and it is a periodic allowance to an individual generally based upon prior service. (Civ. Serv. Law, § 50, subd. 16 [now subd. 22], and dictionaries in general use.) '' Funk & Wagnall's New Standard Dictionary of the English Language (1937 ed., Vol. II) defines a pension as '' A periodical allowance to an individual, or to those who represent him, on account of past serv-

ices or some meritorious work done by him; especially such an allowance made by a government.'' The stipends payable to appellant here are merely a continuation of the combined retirement allowance of her husband. (Administrative Code, § B3-46.0, Option 3.) The reasoning of Surrogate McGAREY in the *Riegelmann* case (*supra*) does not apply because we are not here dealing with a lump sum payable to the estate or to a named beneficiary, but rather with a periodic allowance payable to the widow of a retired city employee. In my opinion the exception inserted into the Constitution relating to the pensions of public employees can have no meaning unless it exempts the widow's annuity in this case from the estate tax. It is certainly operative to exempt such a pension from the New York State income tax. (Regulations of New York State Tax Comm., art. 40, 2 N. Y. Official Compilation of Rules, Codes & Regulations, p. 1355; 1 C. C. H. New York State Tax Reporter, par. 15–367.) While the income tax was uppermost in the minds of the members of the Constitutional Convention, they did not limit the generality of the exception or the section as a whole to the income tax. The constitutional provision on its face makes no distinction between one type of tax and another. It plainly covers all taxes.

The court therefore finds that the imposition of an estate tax upon the annuity payable to the widow of a retired city employee pursuant to an option selected by him on retirement is prohibited by section 5 of article XVI of the New York State Constitution. The appeal is sustained. Submit order on notice modifying the *pro forma* order by fixing the total estate tax due in the reduced sum of $464.53.

(On reargument, November 7, 1951.)

Reargument of this tax appeal was granted upon motion of respondent State Tax Commission limited to the issue of constitutionality. The court has held that the estate tax imposed by article 10-c of the Tax Law upon the commuted value of a survivorship annuity elected by a retiring employee of the City of New York for the life benefit of his widow is prohibited by section 5 of article XVI of the New York State Constitution.

Respondent reads the constitutional provision as exempting only pensions '' *paid to* officers and employees of the state and its subdivisions and agencies''. (Emphasis supplied.) As the pension in this case is being paid to the widow of an employee rather than to the employee himself, it is said that the constitutional ban on taxation does not apply. Such a literal interpreta-

tion of the Constitution would render meaningless the words " except pensions ". Pensions are never " paid to officers and employees of the state ". They are paid to or for the benefit of *retired* employees. The delegates to the Constitutional Convention of 1938 were apparently not satisfied with the assurance of the sponsor of this section as it originally read that it would not subject pensions of retired public employees to tax. (See *ante,* p. 1084.) They therefore inserted the words " except pensions " to make it clear that the power to tax the salaries of public employees would not be construed to extend to their pensions.

The tax here sought to be imposed is one upon the estate of the employee measured by the value of a portion of his pension rights. The payments to the widow are expressly declared to be a continuation of the employee's pension. (Administrative Code of City of New York, § B3–46.0, option 3.) The Constitution should not be narrowly construed. Its language should be given a broad and reasonable interpretation consonant with its spirit. The framers thought they were exempting pensions of public employees from all forms of taxation, evidently in exchange for making clear that their salaries would henceforth be taxable. (See Reports of New York State Constitutional Convention Committee [1938], Vol. X, Problems Relating to Taxation and Finance, ch. XX, pp. 466–479.) Concededly the State cannot impose an income tax upon a public employee's pension. (Regulations of State Tax Commission, art. 40, N. Y. Official Compilation of Codes, Rules & Regulations, p. 1355; 1 C. C. H. New York State Tax Reporter, par. 15–367.) To hold that the ban applies to the income tax and not to the estate tax would produce an inconsistency of results which is not indicated by the context.

The argument that it is not the pension itself which is being taxed, but the right to transfer it at death, ignores the basic fact that, whatever the theory, a tax is sought to be collected because there is a pension. The Constitution says that pensions of public employees are not subject to taxation. This does not mean that they are not subject to direct taxation. It means that they may not be used in any manner as a basis for computing any kind of tax.

Upon reargument the prior determination of the court is adhered to. Submit order on notice.