### HIGGS' ESTATE v. COMMISSIONER OF INTERNAL REVENUE.

No. 10154.

United States Court of Appeals
Third Circuit.

Argued May 25, 1950.

Decided Sept. 28, 1950.

Harrision Tweed, New York City (Milbank, Tweed, Hope & Hadley, Weston Vernon, Jr., Anthony A. Bliss, New York City, on the brief), for petitioner.

Edward J. P. Zimmerman, Washington, D. C. (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, Special Assistants to the Attorney General, on the brief), for respondent.

Before MARIS, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

This controversy, one of first impression, concerns the taxability, as part of the decedent's gross estate, of the value of a survivorship annuity payable to the decedent's widow. The annuity in favor of the widow resulted from the exercise, by the decedent during his lifetime, of an option extended to him in a group retirement benefit contract arranged by his employer with a commercial insurance company, the full consideration for which, in this instance, was paid by the employer.

The Tax Court, four judges dissenting, held the value of the survivorship annuity includible in the decedent's estate, and determined the value, on the date of the decedent's death, of the $7,000 survivorship annuity involved to be $33,867.86.[1]  12 T. C. 280. The executor of the decedent's estate has petitioned for review of this decision with respect to the inclusion of any part of the value of the survivorship annuity.

The facts are not disputed. The decedent, William J. Higgs, died on May 18, 1943, and is survived by his widow, Ella Bolton Higgs. He was an employee of the Socony-Vacuum Oil Company or its predecessors for approximately forty-seven years prior to his retirement on January 1, 1935. The employer had had various systems of pensions and retirement benefits in which the decedent had been a participant, but these were terminated and it entered into an agreement, known as Group Contract No. 103, with the Metropolitan Life Insurance Company on January 1, 1931, pursuant to which the benefits were underwritten and administered by Metropolitan.

The Group Contract gave each employee an option, exercisable prior to the commencement of annuity payments, whereby he might "request the Insurance Company that his Retirement Annuity commence on the normal retirement date for a reduced amount, as determined by the Group Contract, and that it shall be continued after his death, to his designated dependent, should such person survive him." Computations were to be made so that the resulting annuities would be equivalent in value to the annuity to which the employee himself would have been entitled if the option had not been exercised. The exercise of the option made no difference financially to the employer. Benefits under the Group Contract were non-assignable as to the decedent. Further, if an employee who exercised the option referred to continued in his employment past the "normal retirement date" or past forty years of service, and his designated beneficiary predeceased him, the Insurance Company, on his retirement, would pay only the reduced amount of his annuity.

Under the contract of January 1, 1931, the decedent would have reached his "normal retirement date" on January 1, 1938. The contract, however, was amended on January 5, 1934, effective as of January 1, 1934, so that the decedent became eligible to retire immediately. As already stated, he continued in his employment until January 1, 1935. On September 12, 1934, the decedent designated his wife as beneficiary and elected to receive a reduced annuity so that the annuity would be continued to her after his death, should she survive him. He specifically requested that his annuity on retirement be reduced to the extent necessary to provide an annuity of $7,000 for

1. In its original decision, promulgated March 2, 1949, the Tax Court upheld the Commissioner's inclusion of $78,036, on the ground that the taxpayer had not succeeded in showing the fault with that amount. On August 15, 1949, however, the decision was altered to that stated in the text. The issue of value is not now disputed.

his wife for her life after his death in case she should survive him. The insurance company granted this request. The decedent, therefore, was entitled to receive, and was paid from January 1, 1935, until his death, $18,985.27 annually, and after his death the payments of $7,000 annually were made to his widow. Had he not exercised the option, the decedent would have been entitled to receive an annuity of $21,750 for his life.

The entire cost of the retirement benefits provided for the decedent was borne by his employer, the net amount being $218,353.37. The last payment was made by the employer to the insurance company on January 1, 1934, at which time the annuity for the decedent became fully paid. Thereafter, the annuity contract with respect to the decedent was not subject to change by the employer.

On these facts, the majority of the Tax Court determined that the exercise of the option by the decedent during his lifetime constituted a transfer of property falling within Section 811(c) of the Internal Revenue Code, 26 U.S.C.A. § 811(c).[2] Noting that the annuity was fully paid by January 1, 1934, it was held that the decedent possessed property in the paid-up annuity, under which he had reached retirement age and had the right to receive $21,750 annually during his life. And it was concluded that the exercise of the option deprived the decedent of money which he otherwise would have received during his life, thus effecting a transfer to his wife of an interest in the annuity. Reliance was had on Commissioner v. Wilder's Estate, 5 Cir., 1941, 118 F.2d 281, certiorari denied 314 U.S. 634, 62 S.Ct. 67, 86 L.Ed. 509; Commissioner v. Clise, 9 Cir., 1941, 122 F.2d 998, certiorari denied 315 U.S. 821, 62 S.Ct. 914, 86 L.Ed. 1218; and

Mearkle's Estate v. Commissioner, 3 Cir., 1942, 129 F.2d 386. The Commissioner's argument on this petition for review accords with the view of the majority of the Tax Court.

The taxpayer contends, nevertheless, that the decedent, at the time of his election, had only an option to choose between two annuity retirement plans under the Group Contract executed by the employer and the insurance company; that his choice of the lesser annuity for himself with a survivorship annuity of $7,000 for his wife could not operate as a transfer of property, but constituted merely the relinquishment of his right to select the larger annuity for himself; and that only by means of exercising the option did the decedent receive any property interest in a specific retirement annuity. Like the dissenting judges of the Tax Court, the taxpayer rejects the proposition that the decedent constructively received the full annuity and then returned a part of it to the insurance company in consideration for an annuity to his wife. It is noted, too, that the exercise of the option by the decedent resulted in no change in the amount of the employer's contribution, or in the insurance company's obligation to pay the full value of the retirement benefits as provided in the contract. Reliance is had upon Brown v. Routzahn, 6 Cir., 1933, 63 F.2d 914, certiorari denied 290 U.S. 641, 54 S.Ct. 60, 78 L.Ed. 557; and Commissioner v. Pierce, 2 Cir., 1944, 146 F.2d 388. The taxpayer further asserts that the detailed provisions of the Revenue Act of 1942 covering benefits under pension plans show that Congress did not intend to impose an estate tax in the instant situation.

It is a fact of paramount significance to this litigation that subsequent to the decision of the Tax Court herein, Section 811

2. "§ 811. Gross estate. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—
\* \* \* \* \* \*
"(c) *Transfers in contemplation of, or taking effect at death.* To the extent of

any interest therein of which the decedent has at any time made a transfer, by trust or otherwise \* \* \* intended to take effect in possession or enjoyment at or after his death, or \* \* \* under which he has retained for his life \* \* \* the possession or enjoyment of, or the right to the income from, the property \* \* \*."

(c) of the Internal Revenue Code was materially amended, and such amendment, insofar as pertinent hereto, is applicable to this decedent's estate. Public Law 378, October 25, 1949, Section 7, c. 720, 63 Stat. 891, 894.[3] Accordingly, the Commissioner seeks to reach the result obtained by the Tax Court through the application of what is now Section 811(c)(1)(B) of the Code, that is, the reservation of a life interest in the property transferred. He concedes, and properly, that no reversionary interest is involved so as to bring this case within Section 811(c)(1)(C), that is, a transfer intended to take effect at death, as that Section is extenuated by Section 811 (c)(2).

In order to fix the relation to this controversy of the 1949 amendment to Section 811(c), it is necessary to consider first the status of the law at the time the Tax Court reached its conclusion, March 2, 1949. The Supreme Court had already (January 17, 1949) promulgated its determination in Commissioner v. Estate of Church, 335 U. S. 632, 69 S.Ct. 322, 337, 93 L.Ed. 288 330. that May v. Heiner, 1930, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244, was no longer properly interpretive of the clause in Section 811(c) relating to transfers intended to take effect in possession or enjoyment at or after death, and that henceforth the philosophy of Helvering v. Hallock, 1940, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, should prevail. Consequently, with May v. Heiner out of the way, if indeed the decedent here had effected a transfer of property through the exercise of his option to provide an annuity to his wife, she surviving him, the value of the property transferred would be includible in his gross estate under Section 811 (c) as one intended to take effect in enjoyment at his death. And it would have been a useless gesture to determine whether, under the circumstances, the decedent had reserved to himself a life interest in the property transferred. See Estate of Pruyn v. Commissioner, 1949, 12 T.C. 754, 757.

In instances involving the purchase of a joint and last survivor annuity, which supplied the analogy on which the Tax Court based its conclusion in this case, the Courts have hitherto managed to rely not only on that provision of Section 811(c) relating to the reservation of life interests, but as well upon that relating to the necessity of survivorship. This was accomplished through Helvering v. Hallock, supra, albeit without benefit of the Church pronouncement. See Commissioner v. Wilder's Estate, supra; Commissioner v. Clise, supra, especially, 122 F.2d at page 1004; and Mearkle's Estate v. Commissioner, supra, expressly approving of the Clise opinion. Since, as already pointed out, the Tax Court had the benefit of the Church decision, and the 1949 amendment had not yet come into being, it understandably brought the instant transfer, if it were that, within Section 811(c) relying principally upon the alternative holding in the Clise case based on Helvering v. Hallock.

3. "Sec. 7. Transfers Taking Effect at Death.

"(a) Section 811(c) of the Internal Revenue Code (relating to transfers in contemplation of or taking effect at death) is hereby amended to read as follows:

" "(c) *Transfers in Contemplation of, or Taking Effect at Death.*—

" "(1) *General rule.*—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

\* \* \* \* \* \*

" "(B) under which he has retained for his life \* \* \* the possession or enjoyment of, or the right to the income from, the property \* \* \* or

" "(C) intended to take effect in possession or enjoyment at or after his death.

" "(2) *Transfers taking effect at death —transfers prior to* October 8, 1949.—An interest in property of which the decedent made a transfer, on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate under paragraph (1) (C) of this subsection unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer \* \* \*.

"(b) The amendment made by subsection (a) shall be applicable with respect to estates of decedents dying after February 10, 1939. \* \* \* "

The 1949 amendment, however, was the direct result [4] of the Supreme Court's holding in the Church case and its companion, In re Estate of Spiegel v. Commissioner, 1949, 335 U.S. 701, 69 S.Ct. 301, 337, 93 L. Ed. 330, 310. The unmistakable language of the new Section 811(c)(2) decrees that transfers made prior to October 8, 1949,[5] intended to take effect in possession or enjoyment at or after the decedent's death shall not fall within Section 811(c)(1)(C) merely for that reason unless the decedent has retained a reversionary interest.[6]

Assuming that the decedent in the case *sub judice* made a transfer of property to his wife, and that it was one intended to take effect in enjoyment upon his death if she survived him, nevertheless the exercise of the option would not come within the express terms of Section 811(c)(2), the Commissioner conceding that no reversionary interest existed in the decedent. Accordingly, if the transfer is subject to the estate tax, on the Commissioner's contention it must be on the basis of Section 811(c)(1)(B), that is, a transfer under which the decedent had retained for his life the possession or enjoyment of, or the right to the income from, the property transferred. We do not believe that this is so.

The fact which distinguishes the present case from Commissioner v. Wilder's Estate, supra, Commissioner v. Clise, supra, and Mearkle's Estate v. Commissioner, supra, is that in each of these the decedent transferred property to the insurance company in purchase of an annuity for himself to be continued upon his death to his designated beneficiary, the beneficiary surviving. In the case at bar, however, there was no such transfer by the decedent, for the annuity contract was purchased by his employer.[7] Without the option, the decedent had only a life interest under the contract made by his employer, contingent of course only upon his retirement, since he had already satisfied the retirement requirements. With the option, he had only a right to reduce his annuity in order to provide the annuity for his wife.

We do not think it realistic to find that the decedent reserved to himself *under the instrument of transfer* (the exercised option), an interest for his lifetime in the "property" transferred to his wife, just because he did not. (and perhaps could not), transfer his whole interest to her by depriving himself of any annuity whatsoever. The annuity which the decedent had was the inevitable result, not of the incidental exercise of the option, but of the contract which was arranged by and between his employer and the insurance company pursuant to which he was entitled to an annuity in any event.

We conclude, therefore, that, assuming a transfer of property, there was no such transfer within the express meaning of Section 811(c), as amended in 1949. It is unnecessary, therefore, to consider the issue which divided the Tax Court, whether,

4. S.Rep. No. 831, 81st Cong. 1st Sess., Aug. 3, 1949, 1949-2 Cum.Bull. 289, 293; H.Rep. (Conference Report) No. 1412, 81st Cong. 1st Sess., Oct. 11, 1949, 1949-2 Cum.Bull. 295, 296.

5. Commissioner v. Estate of Church, 1949, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288, 330, would appear to be effective to transfers made after October 8, 1949, under the language of Section 811(c)(3): "An interest in property transferred by the decedent after October 7, 1949, shall be included in his gross estate under paragraph (1)(C) of this subsection (whether or not the decedent retained any right or interest in the property transferred) if and only if—(A) possession or enjoyment of the property can, through ownership of such interest, be obtained only by surviving the decedent; or * * *."

6. As defined in Section 811(c)(2), a "reversionary interest" must arise by the express terms of the instrument of transfer; it includes a possibility that the property transferred (A) may return to the decedent or his estate or (B) may be subject to a power of disposition by him; it does not include a possibility that the income alone from such property may return to him or become subject to a power of disposition by him. The value of the "reversionary interest" must exceed five percent of the value of the property.

7. The annuity payments to the decedent have been considered by the Tax Court, in such situation, to be taxable income. See Jones v. Commissioner, 1943, 2 T.C. 924.

indeed, a transfer of property was occasioned by the decedent's exercise of his option.

For the reasons stated, the decision of the Tax Court will be reversed.