**GRANT v. SMYTH.**
Civ. No. 31582.

United States District Court
N. D. California, S. D.
July 1, 1954.

## 772

Edgar T. Zook, Slack & Zook, San Francisco, Cal., Henry V. Colby, McKeon & Colby, San Francisco, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., George A. Blackstone, Asst. U. S. Atty., San Francisco, Cal., for defendant.

HAMLIN, District Judge.

This is an action by plaintiff, as executor of his wife's will, to recover an alleged overpayment of estate tax. The facts are not in dispute and were stipulated at the trial.

Mrs. Grant purchased fourteen annuities in 1938 and 1939 aggregating in cost $390,000. The insurance companies agreed to pay to Mr. and Mrs. Grant jointly, during Mrs. Grant's lifetime, $20,744.52 per year. After the death of Mrs. Grant, Mr. Grant if he survived was to receive the same amount per year for the remainder of his life. These contracts were "single premium non-participating and non-refundable joint and survivorship annuity contracts." At the time of the purchase Mrs. Grant was about 58 years of age and Mr. Grant was about 59.

Mrs. Grant died on March 2, 1947, at the age of 67, leaving Mr. Grant surviving her. An estate tax return was filed which included these annuities in the gross estate of Mrs. Grant and valued them at $160,399.45. This was based on a table of mortality basis as provided in the Treasury Regulations when there are no comparable contracts for purposes of valuation. The government took the position that there *were* comparable contracts and re-valued the annuities at $257,117.20. The Commissioner assessed a deficiency tax in the amount of $29,-235.79. This was paid, together with interest in the amount of $161.89, by the estate on September 22, 1950. This action for refund was filed on June 2, 1952.

Plaintiff makes two contentions: *First*, that the annuities were not includable in the gross estate at all; and *Second*, that if they were includable, the Commissioner's basis for valuation was wrong. If plaintiff should prevail in its first contention, he should recover $29,-397.68. The full tax paid cannot be recovered due to the statute of limitations.

If the annuities are to be included in the gross estate, there are three possible valuations that may be used.

If a survivorship contract purchased just prior to Mrs. Grant's death which would pay Mr. Grant $20,744.52 for his lifetime is a comparable contract, it is stipulated that the valuation of such a contract would be $60,980.72, and plaintiff should recover $29,397.68.

If a single life contract purchased by Mr. Grant at or after Mrs. Grant's death which would pay him $20,744.52 per year for his lifetime is a comparable contract, it is stipulated that the valuation to be used is $257,117.20, and plaintiff should recover nothing. (This is the valuation used by the Commissioner.)

If there are no comparable contracts, it is stipulated that they should be valued on an actuarial valuation which is stipulated to be $160,399.00, and plaintiff should recover $28,603.43. (This is the valuation used in the estate tax return.)

### Includability

■ At the time of Mrs. Grant's death in 1947 there was no question but that these annuities were includable in her gross estate. 26 U.S.C.A. § 811(c) expressly required their inclusion. The plaintiff contends that the Technical Changes Act of 1949, 63 Stat. 891, at Section 7 retroactively changed this.[1]

1. 26 U.S.C.A. § 811(c) as amended by § 7(a) of the Technical Changes Act of 1949 provides in part:

"§ 811. *Gross estate.* The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * *;

"(c) (1) *General rule.* To the extent of

In short, plaintiff contends that this was a transfer "intended to take effect in possession or enjoyment at or after his death" and since the transfer was made prior to October 7, 1949, it is not includable in the gross estate. Plaintiff's contention is that Mrs. Grant retained no possession or enjoyment in the property and did not have the right to the income from it and therefore it is not includable under Section 811(c) (1)(B).

It is true that under the annuity contracts Mrs. Grant parted with all control over the money transferred. It was not kept in any separate fund, but was commingled with the insurance companies' general funds. The companies were bound to pay the annuity whether they lost the particular money paid to them or not. Mrs. Grant had no control over the investment of any of the insurance companies' funds. If Mr. and Mrs. Grant had died the day after the last annuity was purchased they would have received nothing. The increased or decreased earning power of money did not affect the sum to which the Grants were entitled.

Were this question presented to the Court for the first time with no prior authority the Court would be inclined to believe that there was considerable merit in plaintiff's contention that this was a transfer intended to take effect in possession or enjoyment after death and not a transfer wherein grantor retained for life any possession or enjoyment thereof or the right to the income therefrom. However, the Ninth Circuit has held, and this is binding on this Court, that such a transfer is includable in the gross estate.[2] The plaintiff has attempted to distinguish this case and other similar cases[3] on the grounds that when they were decided the courts did not have to make a distinction between a retained life interest and an interest to take effect at or after death since both were always includable. However, the language of the Court in the Clise case clearly establishes that the court considered that the economic benefits were retained by the purchaser of a joint and survivorship annuity.[4]

For this reason, the Court holds that the annuity contracts purchased by Mrs. Grant were includable in her gross estate under 26 U.S.C.A. § 811(c)(1)(B) as a transfer under which she retained for her life the possession or enjoyment of, or the right to the income from, the property transferred.

## Valuation

Having concluded that the annuities were includable in the gross estate, the next question is what was the

---

any interest therein of which the decedent has at any time made a transfer * * * by trust or otherwise—

* * * * * *

"(B) under which he has retained for his life * * * the possession or enjoyment of, or the right to the income from, the property * * *; or

"(C) intended to take effect in possession or enjoyment at or after his death." Section 811(c) (2) exempts from the gross estate transfers taxed under (C) just above, where no reversionary interest is retained (concededly no such interest was retained by Mrs. Grant) and the transfer was made prior to October 7, 1949.

2. Commissioner v. Clise, 9 Cir., 1941, 122 F.2d 998, certiorari denied 315 U.S. 821, 62 S.Ct. 914, 86 L.Ed. 1218.

3. Mearkle's Estate v. Commissioner, 3 Cir., 1942, 129 F.2d 386; Commissioner v. Wilder's Estate, 5 Cir., 1941, 118 F.2d 281, certiorari denied 314 U.S. 634, 62 S.Ct. 67, 86 L.Ed. 509.

4. The Court said, 122 F.2d at page 1003, "Unquestionably, Mrs. Clise, the first annuitant, reserved to herself the enjoyment—the economic benefit, of these contracts during her lifetime. This is true, just as surely as though she had created a trust fund with her property—money, and reserved to herself a certain sum annually, to be paid out of income and corpus, with the remainder over. Mrs. Clise reserved to herself the complete enjoyment of her property, during her lifetime, to the extent she desired to enjoy it, relieved of the worry and cares of management, and guaranteed an estate to the objects of her bounty after her death. It is clear, therefore, that Mrs. Clise retained to herself the economic benefits of her property during her lifetime."

proper valuation that should have been placed upon them. The pertinent treasury regulation is set out in the margin.[5]

The government's position is that what Mr. Grant has *now* is in effect a single life annuity and the proper basis for valuation is what comparable single life annuities cost. It is stipulated that on March 2, 1947, the cost to Mr. Grant of a single premium life annuity contract paying to him $20,774.20 annually for the remainder of his life would have been $257,117.20.

The plaintiff contends that this does not give a true valuation because it ignores the survivorship aspect of the annuities which in fact existed at the time of Mrs. Grant's death and further does not reflect the true value from an economic benefit standpoint. Plaintiff contends that comparable contracts are survivorship contracts, or, in the alternative, that if there are no comparable contracts, the valuation must be on an actuarial basis.

The Mearkle case, supra note (3), is a case where the Court held that the value of similar annuity contracts was the proper method of valuation. There is no definite statement, but it appears from the language of the opinion, 129 F.2d at page 388, that single life annuities were used as the "comparable contracts" to survivorship annuities after the death of one of the annuitants. To the same effect is Estate of John L. Walker, 1947, 8 T.C. 1107.

There are two Tax Court cases that come to different results than the above cited cases.[6] In the Higgs case the Tax Court first held a particular survivorship annuity includable. As to value, the Commissioner had used the value of a single life annuity rather than a survivorship annuity. The petitioner claimed that the cost of a survivorship annuity was the true value. This the Court rejected for *lack of proof*. This proof was later supplied and the Tax Court reduced the Commissioner's valuation from the cost of a single life annuity to the cost of a survivorship annuity. See the Circuit Court opinion 184 F.2d at page 428, footnote (1). The Circuit Court reversed this decision as to the includability, making it unnecessary for it to discuss the valuation. In the Twogood case, in its Findings of Fact, 15 T.C. at page 992, the Tax Court fixed the valuation as the cost of a survivorship annuity at the date of death rather than a single life annuity. However, there was no other discussion of valuation since the Court's decision was that the particular annuity was not includable in the gross estate. (The facts in the Twogood case are very similar to those in the Higgs case.)

From an economic benefit standpoint, it appears to this Court that neither single life nor survivorship annuities are comparable to what Mr. Grant received at his wife's death. Under the income tax laws, three per cent of the cost of the annuities ($390,000) must be reported as income each year. Thus,

5. 26 C.F.R. § 81.10. Treas. Reg. 105, § 81.10. *"Valuation of Property.* (a) General—* * * All relevant facts and elements of value as of the applicable valuation date should be considered in every case.

&ast; &ast; &ast; &ast; &ast; &ast;

(i) Annuities, life, remainder and reversionary interests.—

&ast; &ast; &ast; &ast; &ast; &ast;

(2) The value of an annuity contract issued by a company regularly engaged in the selling of contracts of that character is established through the sale by that company of comparable contracts.

(3) All other future payments are to be discounted upon the basis of compound interest at the rate of four per cent a year. If the time of payment or of payments is dependent upon the continuation of, or upon the termination of a life or of lives, the Actuaries or Combined Experience Table of Mortality, as extended, and established actuarial principles are to be used in the computation of the present worth.

&ast; &ast; &ast; &ast; &ast; &ast;"

6. Estate of Higgs, 1949, 12 T.C. 280, reversed Higgs v. Commissioner, 3 Cir., 1950, 184 F.2d 427; Estate of Twogood, 1950, 15 T.C. 989; affirmed, Commissioner v. Twogood, 2 Cir., 1952, 194 F.2d 627.

$11,700 of the $20,774.20 received each year by Mr. Grant is subject to income tax. If, as is contended by the government, the true valuation is the cost of single life annuities, the holder of $257,117.20 worth of annuities would have to pay a tax on about $7,713 of his $20,774 annual return, or about $4,000 less than what Mr. Grant actually pays tax on. From an income tax standpoint, it appears that the "comparable contracts" the government uses are much more valuable than what Mr. Grant actually has.[7] It is not enough to say that the income tax statutes are not in *pari materia* with estate tax statutes. Income tax consequences are "relevant facts and elements of value"[8] which the regulations say are to be considered in the valuation of annuities.

*Without considering interest,* Mr. Grant would have to live about thirteen years after his wife's death to recover his principal if the government's valuation were used. This it about 30 per cent greater than his actual life expectancy at the time of his wife's death. If interest is considered, the length of time Mr. Grant would have to live to recover his principal is greatly extended.

A survivorship contract purchased just before Mrs. Grant's death would cost $60,980.72. Such a contract, for income tax purposes, might be more valuable for a few years to Mr. Grant than what he has, but thereafter it would be less valuable because after the return of its cost all of the income would be taxable annually for income tax purposes.

Of course, also, each of the parties was considerably older on March 2, 1947, than when the survivorship contracts were first purchased, and their life expectancies had correspondingly changed.

This Court does not believe that such a survivorship contract is "comparable" to what was purchased by decedent in 1938 and 1939, or to what Mr. Grant received by reason of decedent's death in 1947.

The Court is not unmindful of the Treasury Regulation which says that the value of annuities is to be determined by the value of comparable annuities[9] and makes no attack on the validity of this regulation.[10] But the regulation says value is to be established by "comparable contracts." If this means comparable in *type,* certainly the single life contract is not comparable to the survivorship contract. If it means comparable in *value,* neither the single life nor the survivorship contracts are comparable to what Mr. Grant now has. When there is no comparable contract, other methods of valuation must be resorted to.[11]

### Conclusion

The Court concludes therefore that the true value of the annuity contracts as of the date of Mrs. Grant's death is represented by the Actuaries or Combined Experience Table of Mortality and established actuarial principles as set out in Treasury Regulation 105, Section 81.10(a) (i) (3). See footnote (5) at Page 6. This value has been stipulated to be $160,399.45. At even a small rate of interest, in order to recover this "principal", Mr. Grant will have to live many years past his life expectancy.

It is hereby ordered that judgment be in favor of plaintiff and against defendant in the sum of $28,603.43, together with interest and the costs of this suit.

Let plaintiff prepare judgment to conform to the above opinion.

7. Income tax statutes have now remedied this situation, 26 U.S.C.A. § 22(b) (2) (C), but the remedy is not applicable to this estate.

8. See Treas. Reg. 105 set out in the margin on Page 6.

9. See Treas. Reg. 105 set out in the margin on Page 6.

10. Mearkle's Estate v. Commissioner, 3 Cir., 1942, 129 F.2d 386.

11. Treas. Reg. 105, §§ 81.10 and 81.10(a) (i) (3) on Page 6.