Regina Scott-Hall CHRISTIERNIN and the Chase National Bank of the City of New York, Executors of the Estate of Charles L. Christiernin, Plaintiffs,

v.

John E. MANNING, Collector of Internal Revenue, Defendant.

Civ. A. No. 258-50.

United States District Court
D. New Jersey.

March 2, 1956.

Osborne, Cornish & Scheck, by Abram H. Cornish, Newark, N. J., for plaintiffs.

Raymond Del Tufo, Jr., U. S. Atty., by George J. Rossi, Asst. U. S. Atty., Newark, N. J., of counsel. Walter B. Langley, Special Asst. to the Atty. Gen., for defendant.

**924**

HARTSHORNE, District Judge.

Plaintiffs bring this action to recover alleged overpayments of Federal estate taxes (former 26 U.S.C. § 810; 28 U.S.C. § 41(5)[1]). The issue hinges upon the proper valuation for estate tax purposes of that part of a joint survivorship annuity contract which is included in the estate of the first life as transmitted on his death.

The annuity contract was issued by the Metropolitan Life Insurance Company of New York as part of a group plan to one of its employees, Dr. Charles L. Christiernin, the decedent first life. Under the terms of this contract, Metropolitan contributed some of the premiums, Dr. Christiernin the rest. Upon the retirement of Dr. Christiernin he would receive under the contract the sum of $914.37 per month during his life, and at his death his wife, Regina Scott-Hall Christiernin, if she survived him, would receive the sum of $83.43 per month until her death. If Mrs. Christiernin survived her husband, the company would pay to their son, upon her death, a sum equal to the amount of Dr. Christiernin's contributions only, less all annuity payments made as above under the contract.

Dr. Christiernin had not retired when, on October 18, 1944, he died, leaving him surviving his wife, then aged 59. Plaintiffs reported the annuity contract rights in their estate tax return at a valuation of $13,604.13, which was the amount of reserve set up by the Metropolitan, after Dr. Christiernin's death, to meet its further liabilities under the annuity contract to the wife and son. The Commissioner, however, re-valued the contract at $19,350.97, which resulted in an increased tax of $2,239.51, paid by plaintiffs under protest, and now the subject of this suit.

■ At the beginning of this action, plaintiffs raised the question whether this contract was includable in the estate at all, under the doctrine of Estate of Higgs v. Commissioner, 3 Cir., 1950, 184 F.2d 427, decided after the filing of the claim for refund herein. Plaintiffs concede that this point can not be raised, if it was not included in their claim for refund, and the government has not waived its rights. Ney v. United States, 8 Cir., 1948, 171 F.2d 449, certiorari denied 336 U.S. 967, 69 S.Ct. 940, 93 L.Ed. 1119; Pelham Hall Co. v. Carney, 1 Cir., 1940, 111 F.2d 944; Tucker v. Alexander, 1927, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253; United States v. Kales, 1941, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132.

By no fair reading of the claim for refund can it be asserted that the issue of taxability, as distinguished from valuation, was raised, and there has been no waiver. Therefore this Court may not consider this question.

■ Turning to the question of valuation, no one questions the fact that the value of items to be included in the gross estate of the decedent is "the fair market value thereof at the time of the decedent's death", Treas. Reg. 105, Sec. 81.10, such Regulations, if reasonable, having the force of law. Fawcus Machine Co. v. United States, 1931, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397. The Commissioner here computed this fair market value by the use of Sec. 81.10(i)(2) of such Regulation, which provides: "The value of an annuity contract * * * issued by a company regularly engaged in the selling of contracts of that character is established through the sale by that company of comparable contracts."

Plaintiffs do not dispute the validity of this Regulation, but only its applicability. Plaintiffs in fact used, as their own valuation, upon which they based their claim for refund, the reserve in fact set up by the Metropolitan to meet the wife's and son's contractual rights, a method not permitted by the Regulations. Plaintiffs claim now that the above quoted Regulation is inapplicable, and that the applicable method should be the use of the actuarial tables set out in

[1]. Now 26 U.S.C. § 2001; 28 U.S.C. § 1340.

Treas. Reg. 105, Sec. 81.10(i) (3). However, the Regulations show that this actuarial table method is not to be used if the above "comparable contract" method, used by the Commissioner, is applicable. So plaintiffs' contention essentially is that the valuation method used by the Commissioner is inapplicable, because the Metropolitan annuity contract used by him to establish such value is not "comparable" to the annuity contract in question. Here we should note at the outset that the hypothetical annuity contract to be used as a basis for valuation of the annuity contract in question is not to be *identic* with such annuity contract, but only "comparable" to it.

■■ Plaintiffs' first objection to the Metropolitan annuity contract, so used by the Commissioner, is that the Commissioner in so doing selected the wrong time for such valuation, and therefore the wrong kind of a hypothetical, though regularly issued, contract. The Commissioner in fact selected the contractual rights created by the Metropolitan annuity contract as they existed "at the time of the decedent's death"—at the time they were being transferred as a part of decedent's estate, upon and after his death. Plaintiffs claim the contract should be valued not as of that time, but as of the moment before decedent died.

Plaintiffs do not contend that the annuity rights in question should be valued as of the time the Christiernin policy was taken out, long before he died. For this would necessarily include in such value the possible payment of more than $900 per month during decedent's life, amounts obviously not subject to the estate tax—a death tax. In other words, plaintiffs do not contend that the annuity contract to be valued is the joint survivorship annuity as originally issued to Dr. Christiernin. They contend it should be the theoretic joint survivorship annuity contract as it existed "at the instant preceding the death of the decedent" (plaintiffs' brief, page 8), but not including any rights of Dr. Christiernin, for the reason above stated. They con-

tend that the remaining rights, i. e., those of Mrs. Christiernin and those of the son, entitled to the guaranteed return, should be valued as of the instant before Dr. Christiernin died. But this is an impossible contention, since, at such instant, Dr. Christiernin was living and had rights, in addition to those of his wife and son.

Disregarding this, plaintiffs contend that, since the value of the wife's and son's rights at the instant before decedent's death are subject to the deaths of both decedent and his wife, they are actuarially worth less than the same rights are worth the instant of, and after, decedent's death, when they are subject solely to the death of Mrs. Christiernin. Thus, the contention runs, since the contract used by the Commissioner under the above Regulation was one involving the same amounts and the same parties, but as of the instant of Dr. Christiernin's death, same is subject to but a single death, and is therefore of greater value than are such rights subject to the double deaths, so that such contract, used by the Commissioner, was not "comparable" to the contract in question. Such is essentially plaintiffs' first claim, based on the theory that the estate tax speaks, not as of decedent's death, but as of the time he was alive, the instant before death.

But this theory of plaintiffs contradicts the basic nature of the Federal estate tax itself. That such tax was intended to be a form of death tax is too clear for argument. The Act itself says that it is "imposed upon the transfer of the net estate of every decedent * * *." 26 U.S.C. § 810 (1939). There can not be a decedent, till death has occurred. A decedent's estate is not transferred either by his will or by intestacy, till death has occurred. Moreover, the value of the decedent's estate is expressly stated to be "the value at the time of his death". ibid. § 811 [§ 2031(a)]. And the decedent's interest in the property taxable is to be such interest "at the time of his death". ibid. § 811(a) [§ 2033]. The Regulations similarly pro-

vide that the evaluation shall occur "at the time of death". Treas. Reg. 105, Sec. 81.10. Again, in determining the value of insurance contracts under the estate tax, Congress has provided that the items to be considered in that regard are the "amount[s] receivable by the executor * * * [or] * * * by all other beneficiaries". 26 U.S.C. § 2042 (1954), 26 U.S.C. § 811(g) (1939). Such beneficiaries of course can receive only the benefits payable on the occurrence of death.

Plaintiffs' attempted reliance on certain language torn from its context in Knowlton v. Moore, 1900, 178 U.S. 41, 49, 20 S.Ct. 747, 44 L.Ed. 969 and Edwards v. Slocum, 1924, 264 U.S. 61, 62, 44 S.Ct. 293, 68 L.Ed. 564 is unconvincing. The Court there was not dealing with the present question of the time of incidence of the estate tax, but was simply comparing such tax with one on property, on the one hand, and a State inheritance tax, on the other. As compared with an inheritance tax, which is on the right of the heir to inherit the property of decedent, the estate tax is one on the right of the decedent's representative to "transfer" such property. The philosophic and legal basis of both such death taxes is that the Government, under which such rights exist either to transfer or to inherit, can properly charge for carrying out and protecting the wishes of the decedent in seeing that his property reaches his heir, and in protecting such transfer against all attack by third parties, such as might well occur in an uncivilized, ungoverned community. In short, the time the annuity contract rights of the Christiernin wife and son, which plaintiffs agree are the only ones to be considered, are to be valued, is clearly as of the instant of the death of the decedent. Such being the case, the annuity contract in question here is comparable, not to the rights of the wife and son when the decedent was still living, but to such rights the instant he died. Thus the Commissioner, in using as a comparable contract an annuity contract issued by the same company to the same theoretic persons—

the wife and son—at the same ages, in the same amounts, was clearly using a "comparable" contract. Indeed this use of a single life annuity contract was implicitly upheld by the Third Circuit in the similar situation involved in Mearkle's Estate v. Commissioner, 3 Cir., 1942, 129 F.2d 386. See accord Estate of Welliver, 1947, 8 T.C. 165.

It should be noted that the contrary conclusion of the Tax Court in Estate of Higgs, 1949, 12 T.C. 280, was not even considered by the Third Circuit when it reversed such decision on other grounds, Estate of Higgs v. Commissioner, 3 Cir., 1950, 184 F.2d 427. Nor was the similar viewpoint of the Tax Court in Estate of Twogood, 1950, 15 T.C. 989, at all passed on in Commissioner v. Twogood, 2 Cir., 1952, 194 F.2d 627, since the Court there held the estate not taxable at all. Further, certain of the language of the District Court in Grant v. Smyth, D.C.N.D. Cal.1954, 123 F.Supp. 771, affirmed on opinion below, 9 Cir., 1955, 226 F.2d 407, can hardly be deemed a definite holding to the contrary, in the light of the fact that the value of the annuity there, of some $160,000, is actuarially based upon a single life, not a survivorship, contract. Treas. Reg. 105, Sec. 81.10(a) (i) (3), page 775.

■ Plaintiffs further object that the Metropolitan annuity contract, used by the Commissioner as "comparable", was not comparable to the annuity rights of the wife and son here, in type, as distinguished from time. This contention is primarily that the Metropolitan, which issued the contract here in question, did not issue other annuity contracts giving rights of guaranteed return identic with such rights given the son here. As to this, in the first place we should bear in mind that these rights of the son are relatively inconsequential. The rights of Mrs. Christiernin are valued at more than $18,000. The rights of the son are valued at less than $1,000. In addition, the Metropolitan, in connection with its annuity contracts otherwise on all fours with the rights of the wife here, would issue a guaranteed return to the son,

based upon all of the policy premium payments, as distinguished from the policy premium payments made here by decedent only, and it also regularly issues an annuity contract on all fours with that issued the wife here, with no guaranteed return. To do equity even as to this relatively small item, the Commissioner accordingly valued the guaranteed return to the son here according to the identic actuarial formula that the Metropolitan used in valuing its above alternative guaranteed returns, applying same to the premiums contributed by decedent here. Surely this lack of complete identity in this relatively insignificant item can hardly prevent the annuity contract used by the Commissioner, and issued by the same company under approximately the same terms, to the same people, from being considered "comparable". Nor is the fact that there is a theoretic difference in the loading charge upon the group contract originally issued to the decedent and others, from the similar charge made to a private annuity applicant, sufficient to render the contracts non-comparable. The Third Circuit has already held in Mearkle, 129 F.2d at pages 388–389, that such a difference in loading is insufficient to invalidate similar action by the Commissioner. As to the possible difference in mortality rates between a participant in a group annuity contract and the holder of an individual annuity contract, this must be slight indeed, since the actuarial tables set up in the Regulations, for possible use in valuing such annuity when no comparable contracts exist, in no wise allude to any such differentiation. Furthermore, since we are dealing now with the value of these annuity rights of the wife and son as they existed after decedent's death, it can make no difference how, due to such other factors, the original cost varies. The value of these rights of the wife and son are fixed, not as of the time of the original issue of the annuity contract, but as of the time of death. Further, the law justifies overlooking any such possible slight differentiation in original cost, in order to apply the simple common-sense rule of establishing the value of an annuity contract by ascertaining its market value according to the ancient law of supply and demand.

To be sure Grant, supra, alludes to certain additional factors which would appear to make the Commissioner's annuity contract there used non-comparable in that case. But there was no showing here, as there was in Grant, that income tax consequences of the hypothetical and actual contract used here are so different as to make the economic benefits received from such contracts vary substantially, and that thus the action of the Commissioner in using the hypothetical contract was arbitrary, and not to be sustained. Mearkle, supra. Furthermore, the District Court, in Grant, in invalidating the use of the hypothetical contract there pointed out that the annuitant there would have had to outlive his life expectancy by over 30% in order to recapture his principal alone, and there was in that case no guaranteed return. But here, according to the actuarial tables in the appendix to Rule 4 of the Revised Rules used in the New Jersey Courts, stipulated in evidence, Mrs. Christiernin had a life expectancy at the time of her husband's death which would enable her to get a complete return of her principal. While this does not include the fact that she would not earn any interest, that factor is substantially set off by the presence in her contract of a guaranteed return, the security value of a fixed income for life, and the possibility of outliving her life expectancy. This last is no mere speculation, as the testimony in this case indicates that insurance companies find it necessary, in pricing annuities, to consider that annuitants are in fact younger than their actual ages.

Again, if we adopt the actuarial calculation of plaintiffs as to the value of the wife's and son's rights here, we find that such rights are worth less than the cost of the wife's rights alone, without any guaranteed return to the son, according to the selling price of the comparable Metropolitan annuity. If any-

thing, then, it is not the Commissioner's method, but plaintiffs' method, which reaches an arbitrary result.

In the light of the above, it would appear (1) that the estate tax is one conditioned on death, (2) that the rights of the wife and son, now to be valued, at and after such death, are the equivalent of single life annuities with guaranteed return, (3) that the regular single life annuity of the Metropolitan Life Insurance Company, which issued the contract here in question, and which was used by the Commissioner as a basis for valuation, was "comparable" to the contractual rights in question here. It therefore follows that the action of the Commissioner in thus valuing such contractual rights was not arbitrary, but proper and lawful, as is the tax assessed by him as above.

Judgment with costs will accordingly be entered for the defendant.

The facts herein stated and the conclusions of law herein expressed shall be considered the findings of fact and the conclusions of law required by Fed.Rules Civ.Proc. rule 52, 28 U.S.C.