James GRAY, Executor under the Last Will and Testament of Hamilton Gray, Deceased, Plaintiff,

v.

The UNITED STATES of America, Defendant.

Civ. A. No. 470-65.

United States District Court
D. New Jersey.

Dec. 7, 1967.

*se* in the context in which this phrase is used in the newspaper article.

Davidson, Miniutti & Nester, by Joseph S. Nester, Jersey City, N. J., for plaintiff.

David M. Satz, Jr., U. S. Atty., by Martin Tuman, Asst. U. S. Atty., for defendant, Richard C. Pugh, Acting Asst. Atty. Gen., David A. Wilson, Jr., John G. Milano, Attys., Dept. of Justice, of counsel.

## OPINION

COOLAHAN, District Judge:

Plaintiff, executor of the estate of Hamilton Gray, brings this action to recover estate taxes, together with interest as provided by law, which he claims were erroneously and illegally assessed and collected by the defendant from the estate. The deceased, Hamilton Gray, died in 1958. At the time of his death, he was an employee of the Socony Mobil Oil Company (hereinafter referred to as "Socony"), a New York Corporation. Socony presently has in effect, and had at the time of Gray's death, a death benefit plan known as the "Survivorship Benefit Plan for 20 Year Employees" (hereinafter referred to as the "Survivorship Plan"), which provides a death benefit for certain beneficiaries of those employees who die after twenty years of active service with the Company but before retirement. No benefits are payable to the beneficiaries after retirement. It will be necessary to detail some key features of the Survivorship Plan.

Article V of the Plan provides that "the Company reserves the right at any time to terminate, withdraw or modify this Plan in whole or in part at the discretion of the Board [of Directors]" and that "such termination, withdrawal or modification shall have application to existing employees as well as future employees, but a benefit which has once accrued in consequence of the death of an employee while this Plan is in effect will be paid in accordance with the Plan as it is at the time of death." Furthermore, the Survivorship Plan provides that in the event that an otherwise eligible employee fails to designate a beneficiary (Art. I, § c), or having made such designation, the beneficiary predeceases the employee (Art. III), or if the beneficiary should die before receiving the full amount of the benefit (Art. II, §§ a, b), and if no contingent beneficiary is named, all further benefits under the Survivorship Plan would lapse. Under the Survivorship Plan, no person other than the employee's wife, child, or adopted child can receive any benefits unless such other person is dependent upon such employee for his or her principal support, both at the time of designation as well as at the time of death (Art. III). The decision as to dependency in the case of such beneficiaries is left to the sole discretion of Socony's Board of Directors (Art. III) (or, to quote the plan itself,

in the Board's "uncontrolled discretion." Art. IV). In addition, the *method* of making payments under the Survivorship Plan is determined solely by Socony's Board of Directors, although it is true that the total maximum amount of payments is fixed under the terms of the Plan (as twice the base pay of the deceased employee) (Art. II). Payments may be made in instalments or by annuities, and in the case of annuities may be made out of Socony's own funds or may be made through an insurance company from whom Socony might buy an annuity policy. Indeed, the Survivorship Plan goes so far as to permit Socony, should it so decide, to elect to *apply any sum or sums for the benefit of the beneficiary,* rather than pay it to the beneficiary directly. In addition, provisions of the Plan permit Socony to wait for up to three years before it begins payments to the beneficiary.

In the present case, the decedent designated his sister, Isabella Gray, as the primary beneficiary, but failed to designate any contingent beneficiary. Isabella Gray is presently 69 years of age, and has been a semi-invalid all of her life, receiving her entire support from the decedent Hamilton Gray prior to his death. The Socony Board of Directors determined that Isabella Gray qualified under the dependency provisions of the Survivorship Plan, and further determined that the maximum amount payable to her under the Plan was the sum of $35,635.59. The Board chose to make payments to Isabella Gray in the amount of $158.31 per month for the remainder of her life, out of its own funds. As indicated earlier, should Isabella Gray die before receiving the full amount of $35,635.59, all further payments will stop and the Company's obligation will end.

About June 3, 1959, the plaintiff filed a Federal Estate Tax return for the Estate of Hamilton Gray. In the return as filed, the full facts relating to the Survivorship Plan were detailed, and the proceeds were claimed to be exempt from federal Estate Taxes. Upon audit of the return, the District Director of Internal Revenue disagreed, ruling that the value of the proceeds was includable in the estate tax return. On June 20, 1962, plaintiff paid to the Director the alleged resulting deficiency in the tax, amounting to $13,686.65, consisting of $11,582.72 tax plus $2,103.93 interest. Thereafter, on November 19, 1962, the plaintiff filed with the District Director a claim for refund of the $13,686.65. On October 30, 1963, the plaintiff was advised that the claim had been disallowed in full. This suit, seeking $13,686.65 plus interest from June 20, 1962, was commenced on May 7, 1965. All essential facts having been stipulated by the parties, no trial of the action is necessary.

The Socony Survivorship Plan was considered, from an Estate Tax point of view, in the 1957 decision of Molter v. United States, 146 F.Supp. 497 (E.D. N.Y.1957). In that case, the United States District Court decided that the plaintiff's benefits under the Socony Survivorship Plan were not includable in his Gross Estate under sections 811(a), (c), or (d) of the 1939 Internal Revenue Code, the applicable Code since Molter had died prior to August 16, 1954, the effective date of the 1954 Code. Those sections of the 1939 Code were incorporated in the 1954 Code, as 26 U.S.C. §§ 2033–2038. However, defendant does not base its right to collect Estate Taxes in the present case on sections 2033–2038. Instead, it relies on 26 U.S.C. § 2039, a new section in 1954, which provides that:

(a) General.—The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement entered ·into after March 3, 1931 (other than as insurance under policies on the life of the decedent), if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another for his life or for any period not ascertainable

without reference to his death or for any period which does not in fact end before his death.

The most cursory examination of section 2039 will promptly reveal that, were the Survivorship Plan with which Socony provided decedent to be considered by itself, no tax could be levied on its proceeds. There can be no question but that it is necessary that the decedent have an annuity payable to him before money payable to the beneficiary can be taxed. Under the Socony *Survivorship Plan* there is no annuity ever payable to the decedent.

But the case cannot be resolved so easily. Although it is clear that, were the Survivorship Plan to be considered alone, there could be no Estate Tax levied on the beneficiary's proceeds, it is by no means clear that the plan can be considered in isolation. Section 2039 provides for taxability of the beneficiary's benefits if *"under such contract or agreement"* the decedent possessed the right to receive *"an* annuity or other payment." It is the scope to be accorded to the language "such contract or agreement" that provides the focus of much of the dispute between the parties to the present case. Defendant contends that the language is to be accorded a broad scope and properly encompasses the entire employment contract between the decedent and his employer. As a result, it argues, the decedent's participation in Socony's additional "Retirement Annuity Plan," entitling *him* to an annuity for his life had he survived to the normal retirement age, fulfills the requirement of section 2039 that the decedent be entitled to an annuity under his "contract or agreement" with Socony. Plaintiff, on the other hand, contends that each feature of the employer-employee relationship with respect to retirement and survivorship plans is to be examined by itself to see whether the language of section 2039, permitting the taxing of certain

beneficiary benefits, is complied with. All of the law in the area appears to support the defendant.

To start with, it appears that the Treasury Regulations support the defendant's position. Section 20.2039–1(b) provides as follows: "The term 'contract or agreement' includes any arrangement, understanding or plan, or any combination of arrangements, understandings or plans arising by reason of the decedent's employment." Example (6), following the descriptive portions of that section, provides an illustration of a taxable death benefit:

> The employer made contributions to two different funds set up under two different plans. One plan was to provide the employee, upon his retirement at age 60, with an annuity for life, and the other plan was to provide the employee's designated beneficiary upon the employee's death, with a similar annuity for life. * * * The value of the designated beneficiary's annuity is includible in the employee's gross estate. All rights and benefits accruing to an employee and to others by reason of the employment * * * are considered together in determining whether or not section 2039(a) and (b) applies. * * *[1]

There can be no question but that, for purposes of the *present* discussion, Example (6) of the regulation presents a situation identical with that presented here, and that were the regulation dispositive this part of the case will be settled.

Is that regulation dispositive? As the United States Supreme Court stated in Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948):

> This Court has many times declared that Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes

[1]. The example, noting the exception that section 2039 makes for "qualified" pension plans (see section 401(a)), properly noted that, to the extent that the plan in question was so qualified, the applicability of the section was limited. The Socony plan involved in the present case is apparently not such a plan.

> and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons.

See also Fawcus Mach. Co. v. United States, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397 (1931). There can be no question but that the Treasury regulation must be sustained if reasonably based on the statute.

[redacted] It is the court's feeling that the regulation is such a reasonable interpretation. Both the Senate and House Reports on the proposed section 2039 of the 1954 Code contain as an example of a contract to which this section applies:

> (4) A contract or agreement entered into by the decedent and his employer under which at decedent's death, prior to retirement or prior to the expiration of a stated period of time, an annuity or other payment was payable to a designated beneficiary if surviving the decedent.

S.Rep.No. 1622, 83rd Cong., 2d Sess. 470, 3 U.S.Code Cong. & Admin.News pp. 4621, 5114 (1954); H.R.Rep.No. 1337, 83rd Cong., 2d Sess. 90, 3 U.S. Code Cong. & Admin.News pp. 4017, 4458 (1954). Notwithstanding the fact that this example may itself be a poor interpretation of statutory language seemingly requiring that the employee have moneys payable to *him* under some employer plan or other, it would appear *a fortiori* to indicate a congressional intent to tax annuity moneys receivable by a beneficiary where the employee *does* have annuity funds payable to him at the time of his death. Moneys receivable by Isabella Gray under Socony's Survivorship Benefit Plan are taxable under section 2039 notwithstanding the fact that decedent himself had no moneys payable to him under *that* plan. See also All v. McCobb, 321 F.2d 633 (2d Cir. 1963); Bahen's Estate v. United States, 305 F. 2d 827, 158 Ct.Cl. 141 (1962), both of which arrived at the same conclusion.

[redacted] Yet to be considered are other plaintiff objections to taxability of those moneys. Plaintiff suggests that the Survivorship Plan is not taxable to the estate because Socony could have withdrawn it at any time prior to decedent's death. In essence, he raises question regarding when, under the statute, the annuity or other payment need be "receivable" by the beneficiary, i. e., at what time is there a "contract or agreement" from which there arises in the beneficiary the right of receivability? It is his position that, since Socony could have eliminated the plan at any time prior to decedent's death, there was no "contract or agreement" between them. However, it appears that plaintiff has fixed upon the wrong moment. It is the moment *of* death, not the moment *before* death that counts. Although there has been apparently no case law construing section 2039 in this context, cases considering the similar problem of valuation with respect to other Estate Tax sections of the Internal Revenue Code have so concluded. As Judge Hartshorne stated in Christiernin v. Manning, 138 F.Supp. 923, 925 (D.N.J. 1956):

> There can not be a decedent, till death has occurred. A decedent's estate is not transferred either by his will or by intestacy, till death has occurred. Moreover, the value of the decedent's estate is expressly stated to be "the value at the time of his death". Ibid. § 811 [§ 2031(a)]. And the decedent's interest in the property taxable is to be such interest "at the time of his death". Ibid. § 811(a) [§ 2033].

See also Goodman v. Granger, 243 F.2d 264 (3d Cir.), cert. denied 355 U.S. 835, 78 S.Ct. 57, 2 L.Ed.2d 47 (1957); United States v. Land, 303 F.2d 170 (5th Cir.), cert. denied 371 U.S. 862, 83 S.Ct. 121, 9 L.Ed.2d 100 (1962). Needless to say, the foregoing is dispositive of any possible additional argument by plaintiff that Isabella Gray's benefits under the Survivorship Plan should not have been *valued* as of the moment of decedent's death.

■ Plaintiff suggests that the Survivorship Plan is not taxable to the estate because of the degree of discretion possessed by Socony with respect to the manner of implementation of the plan, after decedent's death. It might bear repeating that, although Socony's obligation to pay was fixed after decedent's death, Socony still had "uncontrolled discretion" with respect to deciding whether the named beneficiary still qualified under the plan, and with respect to manner of payment (and could, indeed, postpone payment for up to three years). It will also be recalled that, as a matter of fact in the present case, Socony determined to pay Isabella Gray $158.31 per month for life, payments commencing soon after Hamilton Gray's death.

It appears to me that plaintiff's reliance on Socony's discretion for his conclusion that Isabella Gray's benefits are *not taxable* is misplaced, although his suggestion with respect to discretion could possibly raise problems with respect to *valuation*. Notwithstanding the fact that Socony had virtually untrammelled discretion with respect to the qualification of the beneficiary and manner of payment, there can be no doubt that Socony's obligation to pay *was* fixed at the moment of Hamilton Gray's death. Plaintiff's reliance on In re Estate of Wadewitz, 339 F.2d 980 (7th Cir. 1964), is misplaced. There the Court of Appeals was faced with a pension plan according to which decedent had an absolute right to payments provided that he did not engage in acts competitive with the company. Rejecting the executors' contention that decedent's pension rights were not fixed, the Court of Appeals contrasted the situation where the pension rights were within the control of another. But this language should not be viewed as encompassing the facts of the present case. In contrast to the situation posited in *Wadewitz,* Socony in

the present case had no discretion as to *whether* the Survivorship Plan should be implemented. Its sole discretion went to the eligibility of Isabella Gray, and to the manner of payment under the plan. Although it could be argued that a Socony decision adverse to Isabella Gray on the question of eligibility would have the *same effect* as if the Survivorship Plan were merely voluntary on the part of Socony (Socony having chosen not to give Isabella Gray anything), it is submitted that, notwithstanding the possibly nonexistent quantitative distinction between "no obligation" and "valueless obligation", the qualitative distinction must be observed for the purpose of Estate Tax law.

*Wadewitz* may be distinguished as yet another ground. In contrast to the situation faced in the present case, where the sole uncertainty lies with respect to the *beneficiary's* receipt of money under the Survivorship Plan, the contingency in *Wadewitz* related to a far more important matter in the context of section 2039, namely, the *decedent's* receipt of annuity payments. It will be recalled that in the present case there is no question as to decedent's absolute rights under Socony's additional Retirement Annuity Plan, which entitles him to an annuity upon retirement. It would be far more imaginable that uncertainty as to *decedent's* receipt of money under his contract with his employer—the key element placing his benefits within the purview of section 2039—would result in a decision of non-taxability than would uncertainty as to a beneficiary's receipt of money. The latter contingency is to be taken into account in the valuation process.[2]

In any event, even without reference to *Wadewitz,* it is clear that any conclusion other than that reached here would result in a substantial interstice in the Estate Tax law, permitting the avoidance of tax whenever the annuity and retire-

---

2. This conclusion is buttressed by the fact that section 2039 speaks in terms of the *"value* of an annuity * * * receivable by any beneficiary," while at the same time requiring that the annuity be "payable to the decedent." Thus, payability to the decedent is an absolute requirement, while receivability by the beneficiary is measured by "value."

ment plan being considered allows for seemingly wide employer discretion with respect to either the fact or manner of implementation, and the employer is of such a stature that his good-faith compliance with the program cannot be seriously doubted. An intention to permit such tax avoidance cannot be imputed to Congress. Problems with respect to employer discretion are best left to valuation rather than to taxability.

In the present case, valuation has not been raised as an issue, and is not being decided upon here. No implications should be drawn from the previous discussion as to the manner of valuation which would be appropriate in the circumstances of the present case, although it might be added, parenthetically, that it would appear likely that a fair manner of valuation should take into account the fact that Isabella Gray—presently 69 years of age and a semi-invalid—will have to live over 18 more years in order to receive the full $35,635.59 which she is entitled to under the Survivorship Plan ($35,635.59 ÷ $158.31 per month).

Plaintiff must pay taxes for benefits received by Isabella Gray under Socony's Survivorship Plan.

Let an appropriate order be submitted.